UNITED STATES of America,
Plaintiff–Appellee,

v.

Jimmy Ray JONES, Ronald Dean
Anderson, Defendants–
Appellants.

Nos. 94–6463, 94–6464.

United States Court of Appeals,
Tenth Circuit.

April 4, 1996.

Joseph L. Wells, Oklahoma City, Oklahoma, for Jimmy Ray Jones, Defendant–Appellant.

Michael G. Katz, Federal Public Defender, and Jill M. Wichlens, Assistant Federal Public Defender, Denver, Colorado, for Ronald Dean Anderson, Defendant–Appellant.

Patrick M. Ryan, United States Attorney, and Leslie M. Maye, Assistant U.S. Attorney, Oklahoma City, Oklahoma, for Plaintiff–Appellee.

Before SEYMOUR, Chief Judge, MCKAY, and LUCERO, Circuit Judges.

SEYMOUR, Chief Judge.

Ronald Dean Anderson and Jimmy Ray Jones each pled guilty to counts arising out of a drug-trafficking enterprise. Mr. Anderson pled guilty to conspiracy to possess and to distribute methamphetamine, and Mr. Jones pled guilty to possession of methamphetamine with intent to distribute. Mr. Anderson was sentenced to a term of 144 months, to be followed by a four-year term of supervised release. Mr. Jones was sentenced to a term of 156 months, to be followed by a similar term of supervised release. On appeal, both defendants challenge their sentences, contending the district court violated Rule 32(b)(6)(A) of the Federal Rules of Criminal Procedure and improperly applied the Sentencing Guidelines. We affirm.[1]

In July 1994, a confidential informant contacted Oklahoma City Police Department (OCPD) officers and told them an individual named Emil Barry Lesley had approached the informant about the possibility of purchasing up to four ounces of methamphetamine. Two OCPD undercover officers arranged to meet with Mr. Lesley. When they arrived, Mr. Jones was present as well. At that meeting, Mr. Lesley and Mr. Jones purchased one ounce of methamphetamine from the officers, who then placed them under arrest.

After the arrests, Mr. Lesley and Mr. Jones waived their *Miranda* rights and

agreed to speak with law enforcement officers. Both said that each week for the last six months they had purchased one ounce of methamphetamine, which they resold. They worked together as partners, and if one ran out of methamphetamine he would send a prospective customer to the other. Mr. Lesley and Mr. Jones told the officers their supplier was Mr. Anderson, to whom Mr. Jones had introduced Mr. Lesley.

Officers also learned about Mr. Anderson in a telephone call from another confidential informant, who told them Mr. Anderson could supply ounces of methamphetamine and that he would soon travel to Pauls Valley, Oklahoma, to acquire more methamphetamine. Law enforcement officers maintained surveillance of Mr. Anderson's activities. In late July, they followed him from Oklahoma City to a residence east of Pauls Valley. After ten minutes in the house, Mr. Anderson left and drove back towards Oklahoma City. In Norman, he stopped at a Ramada Inn where officers arrested him. In his car, officers found almost four ounces of methamphetamine.

After waiving his rights, Mr. Anderson told the officers he had gone to Pauls Valley to obtain a quarter-pound of methamphetamine and, on several previous occasions, had obtained at least two pounds of methamphetamine. Mr. Anderson agreed to reveal information to the officers about his methamphetamine source in California, but would not tell them anything about his source in Pauls Valley.

In a later interview, Mr. Lesley told officers that at some point after January 1994, Mr. Anderson had gone to California to acquire five to ten pounds of methamphetamine, which he brought back to Oklahoma. When Mr. Anderson returned to Oklahoma City, he called Mr. Jones and Mr. Lesley and arranged to meet them between Elk City and Sentinel. They went to Mr. Lesley's residence in Sentinel, where Mr. Anderson measured out one ounce of methamphetamine for·

---

1. After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed.R.App.P. 34(f); 10th Cir. R. 34.1.9. Therefore the case is ordered submitted without oral argument.

both Mr. Lesley and Mr. Jones, who each paid him $1,800.

In separate appeals, Mr. Anderson and Mr. Jones now challenge their sentencing. Mr. Anderson maintains he should be resentenced because the district court failed to allow him sufficient time before the sentencing hearing and because the court miscalculated his sentencing range. He also challenges the court's factual findings. Mr. Jones argues the controlled substance attributed to him was erroneously determined to be d-methamphetamine instead of l-methamphetamine, and also contends a downward departure in sentencing was warranted. We consider these arguments seriatim.

The timing of the events following Mr. Anderson's guilty plea are central to his appeal. He entered his plea on October 14, 1994. On November 17, the presentence report was provided to his counsel. Five days later, Anderson's counsel filed his objections. The next day, the probation office filed a revised presentence report reflecting the defendant's objections and responses thereto. On December 13, twenty days later and twenty-six days after the initial filing of the presentence report, the district court held a sentencing hearing and adopted the guideline calculations recommended in the presentence report.

The Federal Rules of Criminal Procedure provide that "[n]ot less than 35 days before the sentencing hearing—unless the defendant waives this minimum period—the probation officer must furnish the presentence report to the defendant, the defendant's counsel, and the attorney for the Government." Fed.R.Crim.P. 32(b)(6)(A). Mr. Anderson contends this rule was violated.

Although less than 35 days elapsed between the filing of the presentence report and the hearing, the government asserts that Mr. Anderson waived the minimum period. Indeed, Mr. Anderson raised no objection at the hearing to the scheduling. He told the court he had had an opportunity to examine the presentence report and to review it with his attorney. Rec., supp. vol. IV at 2–3. He further said he was unaware of any reason why the court should not then sentence him. *Id.* at 44.

■ Three circuits have held that a defendant waives the minimum period by participating in the sentencing hearing without objection. *See United States v. Navejar,* 963 F.2d 732, 734–35 (5th Cir.1992); *United States v. Knorr,* 942 F.2d 1217, 1221 (7th Cir.1991); *United States v. Turner,* 898 F.2d 705, 714 (9th Cir.), *cert. denied,* 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990). We join those courts and hold that Mr. Anderson waived the minimum period when he failed to object at the sentencing hearing.

Mr. Anderson also identifies three errors allegedly made in the calculation of his sentence. Because he did not raise these arguments in the proceedings below, we review for plain error. Fed.R.Crim.P. 52(b); *United States v. Deninno,* 29 F.3d 572, 580 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995). First, he claims he is not the same Ronald Anderson convicted for obtaining money by false means in Custer County in 1981. Second, he maintains that a Garvin County conviction in 1993 was not for driving under the influence, but for driving with a suspended license which would not be included in his criminal history. Third, he insists he deserves a three-point reduction for acceptance of responsibility, rather than the two-point reduction he received.

■ Under the plain error rule, Mr. Anderson is required to show "clear" or "obvious" error that affected his substantial rights, and that seriously affected the integrity of these judicial proceedings. *See generally United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). With regard to the 1981 conviction and the reduction for acceptance of responsibility, Mr. Anderson has clearly not borne his burden of establishing plain error. Each of these issues involves a factual dispute concerning the applicability of a particular guideline, which we have held does not rise to the level of plain error. *See United States v. Saucedo,* 950 F.2d 1508, 1518 (10th Cir.1991), *cert. denied,* 507 U.S. 942, 113 S.Ct. 1343, 122 L.Ed.2d 725 (1993). Although the government concedes Mr. Anderson's 1993 conviction should not be included in his criminal history calculation, his other past convictions are still sufficient to place him in the criminal history category of III.

Mr. Jones argues the court erred in attributing d-methamphetamine to him instead of l-methamphetamine. We review this factual finding for clear error. *Deninno,* 29 F.3d at 580. The sentencing guideline commentary recognizes two isomers of methamphetamine, l-methamphetamine and d-methamphetamine, and treats l-methamphetamine much less severely. *See* U.S.S.G. § 2D1.1 comment. (n. 10(d)(drug equivalency tables)); *see generally, United States v. Bogusz,* 43 F.3d 82, 88–89 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995). For sentencing purposes, the government must prove that the methamphetamine attributed to a defendant is more likely than not d-methamphetamine. *United States v. Lande,* 40 F.3d 329, 331 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1988, 131 L.Ed.2d 875 (1995); *see also United States v. Decker,* 55 F.3d 1509 (10th Cir.1995)(addressing sentencing for d,l-methamphetamine).

No drugs were ever seized from Mr. Jones. However, Mr. Jones told law enforcement officers that he had purchased one ounce a week over a period of six months from Mr. Anderson. At the sentencing hearing, both a narcotics investigator for the OCPD and a DEA chemist testified that the drugs seized during Mr. Anderson's arrest were d-methamphetamine.

Mr. Jones argues that the evidence is ambiguous. Relying on *United States v. Walton,* 908 F.2d 1289, 1302 (6th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), he suggests that in opting between equally plausible estimates we ought to err on the side of leniency. *Walton* is inapposite. Testimony established that Mr. Anderson was Mr. Jones' supplier and that Mr. Anderson was caught with d-methamphetamine. This evidence is not ambiguous. Moreover, no evidence suggests Mr. Jones ever possessed l-methamphetamine. The district court did not clearly err in attributing d-methamphetamine to Mr. Jones.

Mr. Jones also contends the district court should have departed downward from the sentencing guidelines because they over-represent the gravity of his past crimes.[2] A court is required to impose a sentence within the guidelines range "unless [it] finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The Sentencing Guidelines specify that a downward departure may be warranted where "a defendant's criminal history category significantly over-represents" the seriousness of a defendant's past convictions or his likelihood of recidivism. U.S.S.G. § 4A1.3. However, we have previously held that "[s]uch a departure is discretionary and the judge's exercise of discretion not to depart cannot be appealed." *United States v. Pace,* 981 F.2d 1123, 1134 (10th Cir.1992), *cert. denied,* 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993).

We AFFIRM the sentences.

2. Mr. Jones claims his record reflects a pattern of non-violent, alcohol-related crimes. Although Mr. Jones and those in his path have evidently been lucky in this regard, driving under the influence of alcohol is not inherently non-violent.