**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 28 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RUBEN DeSANTIAGO-FLORES,

Defendant-Appellant.

No. 95-1548

---

Appeal from United States District Court
for the District of Colorado
(D.C. No. 94-CR-414-M)

---

Clifford J. Barnard, of Boulder, Colorado, for the appellant.

John M. Hutchins, Assistant U.S. Attorney (Henry L. Solano, U.S. Attorney, and Wayne Campbell, Assistant U.S. Attorney, with him on the brief), of Denver, Colorado, for the appellee.

---

Before TACHA, HENRY, and BRISCOE, Circuit Judges.

---

BRISCOE, Circuit Judge.

---

Defendant Ruben DeSantiago-Flores appeals his various convictions by jury on drug trafficking counts. We affirm and remand with directions to vacate the conviction on count 11.

## I.

Defendant was indicted and tried on fourteen drug trafficking counts. Count 1 charged him with conspiracy in relation to drug trafficking offenses, 21 U.S.C. § 846. Count 2 charged him with engaging in a continuing criminal enterprise, 21 U.S.C. § 848(a). Counts 3 through 8 charged him, both as a principal and as an aider and abettor, with possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B). Count 9 charged him with money laundering and attempted money laundering, 18 U.S.C. § 1956(a)(1)(A)(i), in relation to the purchase of a pickup truck. Count 10 charged him with attempted money laundering, 18 U.S.C. § 1956(a)(1)(A)(i), in relation to transporting $87,270 in currency to Mesquite, Nevada, in an attempt to purchase cocaine for distribution. Count 11 charged him with using and carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c). Counts 12 and 13 charged him under an aiding and abetting theory with violation of § 924(c) for using an incendiary bomb during and in relation to a drug trafficking crime. Count 14 charged him under an aiding and abetting theory with making and possessing a firearm in violation of Chapter 53 of the Internal Revenue Code, 26 U.S.C. §§ 5845(f), 5861, and 5871. The jury returned guilty verdicts on counts 1, 3, 4, 7, 8, 10, 11, 12, 13, and 14, but the court did not enter final judgment or sentence defendant on counts 11 and 12 because it found doing so would violate the double jeopardy clause. Defendant was sentenced to a total of 511 months' imprisonment.

## II.

Defendant contends there was insufficient evidence to prove the bombings in counts 12 and 13 were committed "during and in relation to" a drug trafficking

conspiracy, as required by 18 U.S.C. § 924(c)(1). We disagree.

We review the evidence in the light most favorable to the government to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Jones, 44 F.3d 860, 864 (10th Cir. 1995).

The Supreme Court has interpreted the "in relation to" language of § 924(c)(1) broadly:

> The phrase "in relation to" is expansive, as the courts of appeals construing § 924(c)(1) have recognized. Nonetheless, the phrase does illuminate § 924(c)(1)'s boundaries. According to Webster's, "in relation to" means "with reference to" or "as regards." Webster's New International Dictionary of the English Language, at 2102. The phrase "in relation to" thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. As one court has observed, the "in relation to" language "allay[s] explicitly the concern that a person could be" punished under § 924(c)(1) for committing a drug trafficking offense "while in possession of a firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime. Instead, the gun at least must "facilitate[e], or ha[ve] the potential of facilitating," the drug trafficking offense.

Smith v. United States, 508 U.S. 223, 237-38 (1993) (citations omitted). The evidence in the present case is clearly sufficient to meet the requirement that the bombings be "in relation to" a drug conspiracy.

According to trial testimony, in 1989 or 1990, defendant and his brother-in-law Dan Santistevan went to the home of Jennifer Borrego at 7897 Durango Street, Thornton, Colorado, to sell a kilogram of cocaine to an acquaintance of Borrego. Borrego had arranged the transaction. The acquaintance took the cocaine and fled without paying for it, and Borrego was unable to repay defendant. Defendant remained angry at Borrego for a long time as defendant was required to pay his supplier to settle the debt.

By Labor Day 1992, Brenda Rigenhagen and Chris Cessa had run up a debt for drugs to defendant of about $5,000. As they were unable to pay defendant, he offered them a "job" as an alternative. Defendant told Rigenhagen and Cessa that he wanted them to scare residents of the Durango Street house who owed him money. Defendant apparently did not know that Borrego no longer resided in the house and that her ex-husband and his brother occupied the house. Defendant suggested that Cessa throw a gasoline bomb through the window. Defendant told Cessa that the job would not only work off his debt, at least in part, but would also give Cessa a chance to "become one of the family." Cessa's first attempt to bomb the house was not successful. The glass bottle holding the gasoline went through the window, but landed upright and did not break. Believing Cessa had not done the job, defendant demanded that he pay his debt and threatened Cessa, Rigenhagen, and Cessa's relatives. Cessa improved the design of the bomb and tried again, this time more successfully. Afterward, defendant told his ex-wife that Cessa and Rigenhagen had burned the house down and "taken care of Jennifer."

Defendant argues the evidence was insufficient to establish the bombings were committed in relation to drug trafficking. He argues the evidence supports nothing more than an independent personal vendetta. Our review of the evidence presented leads us to a different conclusion. Regardless of his motive for wanting the house bombed, defendant used the bombing as a means for Rigenhagen and Cessa to pay off their drug debt. Defendant told Cessa he would get no more drugs until the "job" was done. Thus, the bombings were not entirely unrelated to the drug trafficking conspiracy. Indeed, providing Rigenhagen and Cessa with an alternative means to pay for their drugs clearly facilitated or had the potential of facilitating defendant's drug trafficking offense. After

-4-

the successful bombing, defendant again provided Rigenhagen and Cessa with cocaine on credit. In addition, there can be little doubt that defendant's attempt to intimidate Borrego, who had enabled the theft of a kilogram of cocaine from defendant, had the potential of facilitating the drug trafficking conspiracy. Even though there appeared to be no effort to collect from Borrego after the bombing, defendant's violent retaliation against Borrego is related to the drug conspiracy and its continued success and can reasonably be viewed as facilitating the conspiracy by developing defendant's reputation as someone to fear.

## III.

Defendant next argues there was insufficient evidence that he used and carried a firearm to support his count 11 conviction under the instructions given to the jury.[1] He argues there was insufficient evidence to prove he actively employed his .357 magnum revolver in light of Bailey v. United States, 116 S. Ct. 501 (1995). Bailey clarified there must be evidence that the firearm was actively employed, and not merely readily accessible, to support a conviction under the "use" prong of 21 U.S.C. § 924(c)(1). The evidence reveals defendant placed a gun in his boot before entering a building to complete a drug transaction. It does not show he brandished, displayed, bartered, referred

---

[1] Although the district court did not enter judgment on count 11, the jury verdict itself carries collateral consequences warranting our review of count 11. For example, the jury verdict of guilty, if allowed to stand, might be admissible for impeachment purposes at another trial. See United States v. Vanderbosch, 610 F.2d 95 (2d Cir. 1979); see also United States v. Adams, 771 F.2d 783, 786 (3d Cir. 1985) (for some purposes, including Dangerous Special Offenders Act, 18 U.S.C. § 3585 et seq., "conviction" requires only guilty verdict and not judgment on the verdict); cf. United States v. Bloomer, 967 F.2d 761 (2d Cir. 1992) (statute governing detention of person found guilty of offense applies from return of jury verdict, not entry of conviction).

to, or otherwise actively employed the firearm during the course of the transaction to bring about a change in circumstances of the predicate offense. See Bailey, 116 S. Ct. at 508. In Bailey, the Supreme Court explicitly noted a firearm is not being "used" "when an offender keeps a gun hidden in his clothing throughout a drug transaction." Id. at 507.

The government argues defendant actively employed the gun because an accomplice, Rigenhagen, saw him place the gun in his boot and was frightened. Although Bailey does not preclude the possibility that a defendant might actively employ a firearm by intimidating an accomplice to participate, the evidence in this case is insufficient to support the conclusion that defendant displayed the gun for that purpose. Instead, the testimony established defendant displayed the gun at Rigenhagen's request. The government argues, however, and defendant does not contest, that the evidence was sufficient to support a conviction under the "carry" prong of § 924(c)(1). Defendant responds that whatever the evidence, the instruction on § 924(c)(1) in count 11 was inadequate to support his conviction. Defendant did not object at trial to the instruction given on count 11.

The instruction on count 11 did not define "use" and "carry" separately, but defined the phrase "use or carry":

> The phrase "uses or carries a firearm" means having a firearm or firearms available to assist or aid in the commission of the crime alleged in Count 1 of the indictment. In determining whether the defendant used or carried a firearm, you may consider all of the factors received in evidence in the case, including the nature of the underlying crime or drug trafficking alleged, the proximity of the defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.
> The government is not required to prove that the defendant actually displayed or fired the weapon. The government is required, however, to prove beyond a reasonable doubt that the firearm was readily accessible to the defendant at the time the drug trafficking crime alleged in Count 1 was committed; that it

formed an integral part of the alleged crime; and that its availability increased the likelihood that the alleged criminal undertaking would succeed.

Record 16 at 1203-0456. This definition is clearly defective in light of Bailey. It incorrectly implies that defendant could be found to have "used" the gun without actively employing it in the predicate offense. Consequently, we must remand with directions to vacate the conviction on count 11. See United States v. Miller, 84 F.3d 1244, 1257 (10th Cir. 1996) (conviction reversed for defective instruction on "use" where, in light of evidence introduced, jury could have convicted under erroneous instruction). The government does not appeal the district court's rulings that the double jeopardy protections prohibit entry of judgment on count 11.

IV.

Defendant next contends the district court erroneously failed to instruct the jury that in order to convict under § 924(c) on counts 11, 12, and 13, it needed to find Cessa intended to use destructive devices to further the drug trafficking conspiracy. We reject this contention.

Whether Cessa had intent to use destructive devices to further the drug trafficking conspiracy is not relevant to establish the crime charged in count 11. Count 11 dealt solely with defendant's conduct in using or carrying a gun and not with Cessa's conduct in bombing the house. As to counts 12 and 13, in which Cessa played some role, defendant fails to explain why he believes it was important that the jury be required to make some finding of Cessa's intent. Counts 12 and 13 charged defendant with violations of § 924(c) based on his role in the bombings of the Durango Street house. The evidence adduced at trial established Cessa physically committed the bombings at defendant's direction. To establish defendant was punishable as a principal in the bombing, the government relied

-7-

on 18 U.S.C. § 2, which provides:

>        (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>        (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Defendant's argument is apparently rooted in the rule that to convict based on aiding and abetting a crime, there must be proof the crime was committed by someone else, e.g., State v. Williamson, 53 F.3d 1500, 1515 (10th Cir.), cert. denied 116 S. Ct. 218 (1995), and that the defendant shared in the intent to commit the crime, United States v. Smith, 838 F.2d 436 (10th Cir. 1988), cert. denied 490 U.S. 1036 (1989).  However, where as here culpability is based in § 2(b), an individual is criminally culpable when an intermediary is used to commit a criminal act, even though that intermediary has no criminal intent and is innocent of the substantive crime.  United States v. Walser, 3 F.3d 380, 388 (11th Cir. 1993).  Thus, the intent of the person actually performing a proscribed act is immaterial in the prosecution of another under an aiding and abetting theory.  United States v. Laurins, 857 F.2d 529, 534-35 (9th Cir. 1988), cert. denied 492 U.S. 906 (1989).  Therefore, defendant's argument there was no instruction requiring the jury to find Cessa possessed the required intent to violate § 924(c) does not establish error.

V.

Defendant contends the evidence was insufficient to support his conviction in count 10 of attempted money laundering.  To establish this charge, the government must prove the defendant (1) knowingly conducted or attempted to conduct a financial transaction, (2) which involved the proceeds of unlawful activity, (3) with the intent to promote or further that unlawful activity.  See United States v. Salazar, 958 F.2d 1285,

-8-

1293 (5th Cir.), cert. denied 506 U.S. 863 (1992). The government does not assert that defendant conducted any financial transaction, but rather that he attempted to do so. To prove the crime of attempt, the government must establish "(1) the requisite criminal intent, and (2) an act or omission constituting a 'substantial step' toward commission of the substantive offense." United States v. Sullivan, 919 F.2d 1403, 1429 (10th Cir. 1990), cert. denied 506 U.S. 900 (1992).

Defendant argues there was no evidence of any "substantial step" beyond mere preparation sufficient to support an attempt charge and that the evidence does nothing more than raise a suspicion of guilt. The "substantial step" required to establish an attempt must be something beyond mere preparation. It must be an act "adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime." United States v. Monholland, 607 F.2d 1311, 1318 (10th Cir. 1979). A substantial step is an "appreciable fragment" of a crime and an action of "such substantiality that, unless frustrated, the crime would have occurred." United States v. Buffington, 815 F.2d 1292, 1303 (9th Cir. 1987). The step must be "strongly corroborative of the firmness of the defendant's criminal intent," United States v. Mandujano, 499 F.2d 370, 376 (5th Cir. 1974), cert. denied 419 U.S. 1114 (1975), and must unequivocally mark the defendant's acts as criminal, United States v. McDowell, 705 F.2d 426, 428 (11th Cir. 1983). See also Fryer v. Nix, 775 F.2d 979, 993 (8th Cir. 1985). It should "evidence commitment to the criminal venture." United States v. Oviedo, 525 F.2d 881, 885 (5th Cir. 1976). However, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find

that the evidence establishes guilt beyond a reasonable doubt." United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), aff'd 462 U.S. 356 (1983).

The dividing line between preparation and attempt is not clear and depends to a high degree on the surrounding factual circumstances. United States v. Neal, 78 F.3d 901, 906 (4th Cir.), cert. denied 117 S. Ct. 152 (1996). On review, the evidence, both direct and circumstantial, is viewed in the light most favorable to the government, allowing the government the benefit of all reasonable inferences, "to determine whether *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt." Id.

The evidence showed that defendant procured his supply of cocaine from California. His routine was essentially the same each time he traveled to California to purchase cocaine. He would leave his home in Colorado with a large amount of money, accompanied by a woman. Together, they would travel to a hotel-casino, the Virgin River Motel in Mesquite, Nevada, where they would stay overnight on their way to California. The testimony of Virginia Hernandez, defendant's ex-wife, and Rigenhagen establishes this pattern. Each woman had traveled with defendant on more than one of these drug-buying trips.

Defendant was detained at the Virgin River Motel, the same place he used repeatedly on drug-buying trips to California in the past. After Nevada authorities received a tip from Hernandez, defendant was found with over $87,000 wrapped in aluminum foil bundles hidden in his truck in the parking lot. This was roughly the amount he had spent to buy drugs on trips in the past. He had always taken a woman with him on his drug-buying trips and there was a woman with him when the money was

seized. Rigenhagen testified that defendant told her the police "had come too early to catch him with any drugs." Record 12 at 548. He had traveled from Colorado and a search of his home revealed only trace amounts of cocaine, although several witnesses had seen large quantities there in the past.

When all of the evidence is viewed together, it is sufficient to support an inference of intent and that defendant's money laundering scheme had advanced beyond mere preparation. His actions toward a course of conducting a prohibited financial transaction are sufficient to provide strong corroboration of his intent to consummate the financial transaction and evidence his commitment to the criminal venture.

VI.

Defendant contends his conviction on count 10 requires reversal because the jury instructions failed to define "attempt" and "transaction." Since he did not object to the failure to so instruct, we review only for plain error. Fed. R. Crim. P. 52(b). Under the plain error rule, the appellant "is required to show 'clear' or 'obvious' error that affected his substantial rights, and that seriously affected the integrity of [the] judicial proceedings." United States v. Jones, 80 F.3d 436, 438 (10th Cir.), cert. denied 117 S. Ct. 139 (1996). The plain error exception is to be used only sparingly and only when needed to avoid a miscarriage of justice. United States v. Denogean, 79 F.3d 1010, 1013 (10th Cir.), cert. denied 117 S. Ct. 154 (1996).

Attempt is a term of such common unambiguous meaning that it is not plain error to fail to define it. United States v. Watson, 953 F.2d 406, 410 (8th Cir. 1992). Although the district court did not define "transaction," it did define "financial transaction." The definition of "transaction" in 18 U.S.C. § 1956(c)(3) is not highly technical or more

-11-

restrictive than the common understanding of the term, such that failure to provide the definition is plain error. Cf. United States v. Lovett, 964 F.2d 1029 (10th Cir.), cert. denied 506 U.S. 857 (1992) (failure to define "monetary transaction" not plain error).

VII.

Defendant argues the indictment is constitutionally defective as to count 14 because it failed to allege all of the essential elements of "making" a destructive device.

The legal sufficiency of the indictment can be challenged at any time, although where, as here, the challenge is not made during trial "the challenged language will 'be construed liberally in favor of validity.'" Sullivan, 919 F.2d at 1410 n. 5. "An indictment that sets forth the words of the statute generally is sufficient so long as the statute itself adequately states the elements of the offense." United States v. Darrell, 828 F.2d 644, 647 (10th Cir. 1987). An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges he must defend, and enables the defendant to assert a double jeopardy defense. United States v. Poole, 929 F.2d 1476, 1478 (10th Cir. 1991).

Count 14 charged defendant for his role in helping Cessa make the bombs thrown at the Durango Street house. In relevant part it charged defendant "did knowingly aid, abet, counsel, command, induce, procure and willfully cause another person to make and possess a firearm made in violation of Chapter 53 of the United States Internal Revenue Code." Record 1 at 13.

The charge against defendant was that he violated 26 U.S.C. § 5861. *Inter alia*, that statute makes it unlawful for any person to "receive or possess a firearm made in violation of the provisions of this chapter," § 5861(c), and "to make a firearm in violation

of this chapter," § 5861(f).  Defendant argues the indictment was defective for failing to allege how the firearm violated Chapter 53 or which provision of Chapter 53 it violated.

The Second Circuit rejected a similar claim in United States v. Mayo, 705 F.2d 62 (2d Cir. 1983), which we find convincing:

> "An indictment need only provide sufficient detail to assure against double jeopardy and state the elements of the offense charged, thereby apprising the defendant of what he must be prepared to meet."  Under this standard, the allegations in counts 11 and 13 were sufficient to apprise appellants of the conduct alleged to have violated 26 U.S.C. § 5861(e) (1976).  Under that statute, it is unlawful "to transfer a firearm in violation of the provisions of [Chapter 53 of Title 26, U.S.C.]."  The indictment tracked the language of the statute and, moreover, specified the time and place of the allegedly illegal transfer.  This information adequately identifies the illegal transaction and is sufficient to withstand constitutional scrutiny.  It might have been preferable to have identified the provisions of Chapter 53 that were violated by the allegedly unlawful transfer, see 26 U.S.C. § 5812 (1976), but it was certainly not necessary.

705 F.2d at 78 (citations omitted).  Failure to elaborate the provision of Chapter 53 violated by the making of the bombs in question does not render the indictment fatally defective.

In a similar argument, defendant contends the instructions on count 14 were insufficient because, like the indictment, the instructions failed to set out which provision of Chapter 53 the incendiary devices violated and what proof was required to establish that their making in fact violated the provision in question.  The jury was instructed as follows:

> The defendant can be found guilty of this offense only if all of the alleged following facts are proved beyond a reasonable doubt:  First, that the defendant possessed a firearm as defined above; and second, that the firearm was manufactured in violation of Chapter 53, United States Internal Revenue code.

Record 16 at 1206-07.  The instruction did not inform the jury of any specific requirements relating to the manufacture of firearms or what act or acts defendants

committed in violation of Chapter 53.

When a defendant does not object to a challenged instruction, we review only for plain error. Fed. R. Crim. P. 52(b) A reversal under Rule 52(b) is proper only when there is some error that has not been waived, when that error is plain, clear, or obvious, and when that error affects defendant's substantial rights. United States v. Olano, 507 U.S. 725, 733-34 (1993). Otherwise, defendant's failure to object to the error renders it irretrievably forfeited. This generally means the error "must have affected the outcome of the district court proceedings." Id. at 734. It is the defendant who bears the burden of proving the outcome would have been different but for the error under Rule 52(b).

After reviewing the record, we conclude failure to describe to the jury what constitutes a violation of Chapter 53 does not warrant reversal in this case. Failure to detail what is required for the manufacture of a firearm to violate Chapter 53 is error and that error is plain. Jury instructions are erroneous when the jury lacks an understanding of the issues and its duty to determine the issues from the instructions. See, e.g., United States v. Voss, 82 F.3d 1521, 1529 (10th Cir.), cert. denied 117 S. Ct. 226 (1996). Clearly, lack of any instruction on the requirements of Chapter 53 left the jury with an incomplete understanding of the issues before it. However, unless that incomplete understanding is coupled with prejudice to defendant, reversal is not warranted. See United States v. Martin, 18 F.3d 1515, 1519 (10th Cir.), cert. denied 115 S. Ct. 187 (1994). Our inquiry is simply whether defendant has carried his burden to establish that but for the plain error the outcome would have been different. Our review of the record establishes defendant has not met that burden.

The uncontested evidence shows the bombs were made in violation of Chapter 53.

-14-

Uncontested trial testimony based on a search of the files of the Department of the Treasury revealed no one involved had been given prior approval to make the incendiary devices. This lack of approval conclusively establishes as a matter of law that the bombs were made in violation of Chapter 53. 26 U.S.C. § 5822(e) prohibits any person from making a firearm unless such person has "obtained the approval of the Secretary to make and register the firearm and the application form shows such approval." Consequently, the jury had a factual predicate for rendering its verdict of guilty and, indeed, rendered such a verdict. Defendant has not established the jury's verdict would have been different with more detailed instructions.

Even where substantial rights are affected, recognizing and remedying plain error is discretionary with the appellate court. Olano, 507 U.S. at 735. This discretion should be used where a plain forfeited error affects substantial rights if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Olano, 507 U.S. at 735 (quoting United States v. Atkinson, 297 U.S. 157 (1936)). Even if we were to conclude the lack of detail in the jury instructions affected some substantial right independent of defendant's innocence or guilt, we are not convinced in this case that it impacted the fairness, integrity, or public reputation of the proceeding in so serious a manner as to warrant exercise of this court's discretion.

## VIII.

Defendant's next argument concerns the jury instructions regarding aiding and abetting. Again, this objection is raised for the first time on appeal. The initial instructions to the jury did not include an instruction defining aiding and abetting. The jury asked a question about the meaning of the aiding and abetting language in count 12

of the indictment. In response, the district court gave an aiding and abetting instruction and pointed out that it applied to counts 13 and 14 as well. The district court concluded its instruction on aiding and abetting as follows:

> Now, this is an additional instruction for you, defining aiding and abetting. Of course, in giving you this additional instruction, I must also repeat that which I said in the instructions, that this instruction must be considered in connection with, as it relates to the other instructions which I gave you, because all of the instructions, of course, must be considered together, as they are connected with and related to each other as a whole.

Record 17 at 1236-37.

Defendant argues count 1 is duplicitous and the failure of the court to give an aiding and abetting instruction somehow enabled the jury to return a non-unanimous verdict. Count 1 charged as follows:

> From in or about the year 1989, through and until the 17th day of March 1994, in the State and District of Colorado and elsewhere, the defendant, RUBEN DeSANTIAGO FLORES did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with and among other persons both known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, that is to possess with intent to distribute and to distribute in excess of five (5) kilograms of a mixture and substance containing a detectable amount of cocaine, and to aid and abet others in the possession with intent to distribute and the distribution of cocaine, a schedule II controlled substance, contrary to the provisions of Section 841(a)(1) of Title 21, United States Code.

Record 1, doc. 1. The basis for defendant's argument--that count 1 charges two separate crimes, conspiracy to possess with intent to distribute and aiding and abetting the possession with intent to distribute--is flawed. The indictment does not charge any drug possession offense; it charges only conspiracy. The predicate offenses for the conspiracy are violations of 21 U.S.C. § 846, both directly and through a theory of aiding and abetting. The indictment is poorly drafted and the reference to aiding and abetting was

-16-

likely unnecessary. However, defendant challenges lack of an instruction, not the indictment. An instruction on aiding and abetting with reference to count 1 was unnecessary and failure to give such an instruction is not plain error.

Counts 3, 4, 7, and 8 were substantive charges of possession with intent to distribute. The charges alleged both that defendant was a principal and that he was culpable under a theory of aiding and abetting. Although no aiding and abetting instruction was given to the jury, the district court remedied this defect when it later supplied an instruction and told the jury to consider the new instruction as related to all previous instructions. On review, the jury instructions are viewed as a whole to determine whether they correctly state the applicable law. E.g., United States v. Edwards, 69 F.3d 419, 433 (10th Cir. 1995) cert. denied 116 S.Ct. 2497 (1996). There is no plain error.

AFFIRMED and remanded with directions to vacate the conviction on count 11.