**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CHRISTOPHER KLUDING,

    Defendant-Appellant.

No. 00-6344
(D.C. No. 99-CR-107-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **SEYMOUR** , **BRORBY** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Christopher Kluding appeals his convictions and sentence for Medicare fraud and conspiracy to commit Medicare fraud. We affirm.

Defendant Christopher Kluding and his former wife, Tracy Kluding Reed, met James Gilbert in nursing school. After graduating in 1993, the three formed a home health company, Qualicare Home Health, Inc., to provide home care for Medicare patients. Qualicare initially employed a billing company, HSSI, to perform its Medicare billing at a cost of a dollar per visit. In the spring of 1995, the three formed another corporation, Monarch Management, to provide management services to Qualicare, including Medicare billing services at a cost of thirteen dollars per visit. Tracy Kluding Reed remained at Qualicare, while Gilbert and Christopher Kluding sold their shares in Qualicare on April 30, 1995, and became the owner and chief financial officer, respectively, of Monarch. In April 1996, Christopher Kluding was terminated from Monarch.

During the year of 1995, Qualicare billed for and received interim payments from Medicare, and in May 1996, the corporation submitted its 1995 Medicare Cost Report. The report, which showed payment of $754,460 in management fees to Monarch, did not identify Monarch as a related organization.

On June 15, 1999, a grand jury indicted defendant Christopher Kluding on one count of conspiracy in violation of 18 U.S.C. § 371, one count of Medicare fraud in violation of 42 U.S.C. § 1320a-7b(a)(2), and one count of causing a false

statement to be submitted to Medicare in violation of 18 U.S.C. § 1001, § 1002. On September 22, 1999, Gilbert and Tracy Kluding Reed each pled guilty to one count of conspiracy. After a jury trial, defendant Christopher Kluding was convicted on the conspiracy and Medicare fraud charges, but was acquitted of causing a false statement to be submitted to Medicare. He was sentenced to thirty-one months' incarceration, and was ordered to pay $532,432 in restitution. Defendant appeals his convictions and sentence.

Defendant argues first that the evidence was insufficient to support his conviction for conspiracy and Medicare fraud. We review a challenge to the sufficiency of the evidence de novo, *United States v. Wilson*, 244 F.3d 1208, 1219 (10th Cir.), viewing the evidence and inferences therefrom in the light most favorable to the government, *id.*, to determine whether any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this case, there was more than enough evidence to support the jury's verdicts.

Providers of home health care for Medicare patients are carefully regulated, with limits and restrictions on their costs, including the amounts allowable for owners' salaries and benefits. If a home health care provider conducts business with a "related organization," the organization's costs and salaries are also limited. *See* 42 C.F.R. § 413.17.

Here, there was abundant evidence that the two organizations were "related," including the fact of the Kludings' marriage, the fact that Qualicare was Monarch's only client, the use of one corporation's funds or credit to pay for the other corporation's expenses, the use of Monarch funds to pay for the Kludings' and Gilbert's personal expenses, and evidence that defendant and his former wife had significant control over both organizations. *See* Appellee's Supp. App., Vol. III at 202-03; Vol. IV at 320-21, 324-25, 329, 331-35, 337-40, 343-46, 348, 350-54, 357, 371; Vol. V at 470, 480, 489-91; Vol. VI at 563. There was also evidence that defendant, his former wife, and Gilbert were well aware of the Medicare restrictions and related-party issues, that they formed Monarch specifically to circumvent the salary and benefit limitations, and that they consciously structured their roles to obscure their real relationship. *Id.*, Vol. IV at 310-12, 324-25, 358, 368-70, 399-400; Vol. V at 403-04, 408, 410-11, 420, 440-41, 449, 461-62; Vol. VI at 507-09, 543, 597-600. This evidence was sufficient to enable a rational trier of fact to conclude that the elements of conspiracy and Medicare fraud were proved beyond a reasonable doubt.

Defendant contends the district court erred in refusing to grant his motion for a judgment of acquittal on the conspiracy and Medicare fraud counts, on the ground that his acquittal on the third count of the indictment conflicted with his conviction on counts one and two. We review the denial of a motion for a

judgment of acquittal *de novo*, viewing the evidence and inferences therefrom in the light most favorable to the government. *United States v. Austin*, 231 F.3d 1278, 1283 (10th Cir. 2000).

The district court did not err in denying defendant's motion for acquittal. First, the verdicts were not necessarily inconsistent. The conspiracy alleged in count one and the Medicare fraud alleged in count two were based on defendants' entire scheme to obtain more money than that to which they were entitled in light of the related nature of their organizations. In contrast, count three rested solely on the making of the May 31, 1996 statement that there were no related party transactions during the previous year. It is quite possible that the jury found defendant guilty of planning and placing the Medicare fraud scheme into motion without personally making the statement on May 31, 1996. Even if the verdicts were inconsistent, the Supreme Court has held that consistent verdicts are not necessary, and that verdict inconsistency does not entitle a defendant to have the verdicts set aside. *United States v. Powell*, 469 U.S. 57, 62-66 (1984).

Defendant argues that the district court committed "structural error" by informing the jury that it was a common occurrence for a co-conspirator to plead guilty and testify at the trial of another. He argues that this statement somehow vouched for the credibility of the witness. Because defendant did not object, we review the court's statement for plain error. *See Johnson v. United States*,

520 U.S. 461, 466 (1997) (holding plain error analysis applies even when error is allegedly "structural").  Under this standard, a  reversal is warranted only when (1) there is an error, (2) that is plain, (3) which affects substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.* at 467.

Defendant has not explained how the district court's statement supported the witness' credibility or how this amounted to structural error.  If this statement was error at all, it was harmless since the jury was later instructed that co-conspirator testimony "is always to be received with caution, weighed with great care and carefully scrutinized," and that such testimony might be "affected by self-interest, by an agreement . . . with the government, by his . . . own interest in the outcome of the case, or by prejudice against the defendant."  Appellee's Supp. App., Vol. X at 894-95.  As harmless errors do not meet the standard for plain error, *Wilson*, 244 F.3d at 1219 n.6, defendant's argument fails.

Defendant argues next that he was deprived of due process by the district court's delaying of its hearing on whether to admit co-conspirator statements. He asserts that because the district court did not hold the hearing until the first day of trial, when he had filed his motion for the hearing a full week earlier, he was unable to anticipate the government's evidence.  This argument is meritless.

Defendant clearly knew the government intended to use the statements of his co-conspirators at trial, as evidenced by his motion to determine the admissibility of such statements. In addition, defendant has not cited any authority to support his argument that holding the hearing at the beginning of trial implicates due process. We have held, in fact, that the district court need not hold a pretrial hearing at all, but may instead admit co-conspirator testimony provisionally at trial, so long as the prosecution later demonstrates the existence of a conspiracy, the defendant's participation, and that the disputed statements were made in furtherance of the conspiracy. *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). Our decision that it is within the district court's discretion to decide the order of proof regarding the admissibility of co-conspirator statements undercuts defendant's argument that a specific order is constitutionally mandated. *See id.* at 1124.

Defendant contends he was prejudiced by prosecutorial misconduct. Specifically, he argues that the prosecutor elicited false testimony from Special Agent Klotz regarding the performance of Tracy Kluding Reed's agreement to purchase defendant's and Gilbert's Qualicare stock; improperly showed the jury pictures of defendant's home; and implied that defendant was driving a Rolls Royce. Because defendant has not shown he made contemporaneous objections to the admission of such evidence, we review his claims of prosecutorial misconduct

for plain error.  *United States v. Gonzalez-Montoya*, 161 F.3d 643, 650 (10th Cir. 1998).

To show that Special Agent Klotz's testimony violated due process, defendant must demonstrate that his statement was false, that the prosecution knew it was false, and that the statement was material.  *Smith v. Massey*, 235 F.3d 1259, 1271 (10th Cir. 2000).  It does not appear that Klotz's testimony was "false," based on his explanation that he was not willing to take certain documents at face value because he had no idea when they were really executed.  Appellee's Supp. App., Vol. VI at 584.  In light of co-conspirator Gilbert's testimony that defendants had recreated the promissory note in 1996, and that he did not remember the one-year payment as a term in the original, *id.*, Vol. IV at 360-61, we do not consider Special Agent Klotz's unwillingness to testify that the note was paid to be a false statement.  This is especially so given his later testimony that if a bank employee testified the purported payments were actually deposited in the bank, he would accept that as true.  *Id.*, Vol. VI at 585.

Further, even assuming the statement was false, defendant has not shown that the prosecution knew of its falsity, or that the statement was material in light of the significant cross-examination to which Special Agent Klotz was subjected and the strength of the other evidence against defendant.  *See United States v. Langston*, 970 F.2d 692, 700-01 (10th Cir. 1992) (holding a statement was not

material when the witness was extensively cross-examined and impeached regarding the statement).

Further, defendant has not shown how admitting a picture of the home that he and his wife purchased in 1995 rises to the level of plain error. The picture certainly was probative of defendant's change in lifestyle after Monarch was formed, and he has not explained how its admission was unfairly prejudicial or how it "deprived [him] of his fundamental right to a fair trial." Appellant's Br. at 23. The same can be said for the hypothetical question asked of government witness Jennifer Bell regarding reimbursement of expenses incurred by home health care workers. To establish that reimbursable expenses had to be reasonable, the prosecution asked whether a very expensive car, such as a Rolls Royce, would be covered. The prosecution did not suggest that defendant drove a Rolls Royce, and, in fact, showed later that defendant drove a Lexus. Neither the admission of the picture nor the Rolls Royce comment constituted clear and obvious error that fundamentally affected the integrity of the trial.

Defendant argues next that the district court erred in denying him a two-point reduction for acceptance of responsibility under United States Sentencing Guideline § 3E1.1(a). Again, as he did not object at trial, we review only for plain error. *United States v. Jones*, 80 F.3d 436, 438 (10th Cir. 1996).

Because the issue of acceptance of responsibility is a question of fact, the district court's application of the guideline did not rise to the level of plain error. *Id.*

Defendant's argument that the district court erred in overruling his objection to the presentence report regarding Medicare's loss is also without merit. We review the district court's factual determination regarding the amount of loss attributable to a fraud offense for clear error. *See United States v. Burridge*, 191 F.3d 1297, 1301 (10th Cir. 1999). Here, there was evidence that Blue Cross Blue Shield paid defendants $532,432 more than that to which they were entitled under the Medicare salary allowances. Whether or not Medicare can offset this amount against future payments is irrelevant to calculating the amount of loss for sentencing purposes. *Id.* at 1301-02. Moreover, any Medicare amounts that might be due to Qualicare, a corporation in which defendant has no ownership interest, are irrelevant to the amount defendant owes as restitution.

Finally, defendant argues that the alleged errors committed by the district court, when taken cumulatively, denied him a fair trial. As we have rejected defendant's individual claims of error, the cumulative error analysis does not apply. *See Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998).

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

Stephanie K. Seymour
Circuit Judge