**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jack Houston FREEMAN,**
**Defendant–Appellant.**

**No. 01–5200.**

United States Court of Appeals,
Tenth Circuit.

July 23, 2002.

Before SEYMOUR, HENRY, and BRISCOE, Circuit Judges.

## ORDER AND JUDGMENT *

HENRY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to honor appellant's request for decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f). The case is, therefore, ordered submitted without oral argument.

Jack Houston Freeman pleaded guilty to two counts of a nine count indictment: (1) aiding and abetting the injection of hazardous waste, in violation of 42 U.S.C. § 300h–2(b)(2) and 18 U.S.C. § 2; and (2) aiding and abetting the disposal of hazardous waste without a permit, in violation of 42 U.S.C. § 300h–2(b)(2) and 18 U.S.C. § 2. The district court determined the total offense level to be 13, criminal history category of I, with a guideline sentence range of 12–18 months. The court sentenced Mr. Freeman to thirteen months' imprisonment, ordered a $10,000 fine, im-

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

posed a $200 Special Monetary Assessment, and ordered restitution in the amount of $52,496. The restitution order was made joint and several with a separately tried and convicted co-conspirator.

On appeal, Mr. Freeman challenges his sentence on four grounds: (1) the district court erred in considering Mr. Freeman's co-conspirators' conduct as "relevant conduct" under USSG § 1B1.3, comment. (n. 2); (2) the district court erred by declining to reduce Mr. Freeman's offense level pursuant to USSG § 2Q1.2(b)(1)(B), comment. (n.5); (3) the district court erred by declining to reduce Mr. Freeman's offense level pursuant to USSG § 2Q1.2(b)(4), comment. (n.8); and (4) the district court erred in concluding that Mr. Freeman was not entitled to a downward departure for "aberrant behavior," pursuant to USSG § 5K2.20. We have jurisdiction pursuant to 18 U.S.C. § 3742(1) and (2) and, for the reasons set forth below, we affirm.

## I. BACKGROUND

Mr. Freeman owned a piece of business property located at 4701 East 126th Street North, Collinsville, Oklahoma. He had leased the property to an electroplating business that produced waste by-products such as chromium—contaminated and nickel—contaminated solutions.

After the electroplating business failed in 1999, Mr. Freeman contacted a previous lessee, Danny Dennis Sunday, and asked for assistance in clearing out the building. While Mr. Sunday was under no obligation to help Mr. Freeman, he agreed to do so. Mr. Sunday initiated the process of allowing certain plating solutions to evaporate from tanks housed in the building.

Mr. Freeman, impatient with the evaporation process, asked Mr. Sunday if there was a quicker method to dispose of the solutions. Mr. Sunday proposed an expensive, and also legal, alternative, and also

mentioned an illegal method, the disposal in a salt water injection well. Mr. Freeman agreed to the illegal disposal at the rate of $250 per tank of solution.

Mr. Sunday contacted Clinton Cody Crown, who was familiar with an energy company that had a salt water injection well. In December of 1999, Messrs. Crown and Sunday loaded the plating solutions onto a trailer. Shortly thereafter, Mr. Crown, acting alone, dumped the drums into an overflow pit—not the well—at the energy company. Messrs. Sunday and Crown subsequently loaded the remaining waste into tanks and let the tanks drip onto county roads in Washington, Tulsa, and Osage counties in Oklahoma.

Mr. Freeman paid Mr. Crown $500 for the disposal of the solutions. On December 14, 1999, the solution was discovered on the roads in Osage County; subsequently, Messrs. Freeman and Crown were indicted for the violations.

## II. DISCUSSION

### A. Standard of Review

Each of Mr. Freeman's challenges relates to the district court's legal interpretations of the guidelines and/or to the application of the guidelines to the facts. "We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error." *United States v. Turner*, 285 F.3d 909, 915 (10th Cir.2002). We give "due deference" to the district court's application of the sentencing guidelines to the facts. 18 U.S.C. § 3742(e) (2001).

### B. Relevant Conduct

█ Mr. Freeman first challenges the district court's consideration of the acts of his co-conspirators in the calculation of his offense level. Section 1B1.3 of the USSG

instructs that the district court should calculate the base offense level by considering specific offense characteristics and:

in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.

USSG § 1B1.3(a)(1)(B).

Mr. Freeman maintains that he should not be held accountable here because he had no knowledge of the intended deposit of the chemical on the roads or in the overflow tank. He understood the disposal would be in the injection well. Relying on *United States v. Melton,* 131 F.3d 1400 (10th Cir.1997), Mr. Freeman notes that he should not be responsible for unforeseeable intentional acts of his co-conspirators. In *Melton,* we reversed the district court's sixteen-level enhancement of the defendant's sentence. There, while the government conceded that the defendant's involvement in the counterfeiting scheme ended at his arrest, the district court attributed post-arrest conduct to Mr. Melton, which included the manufacture of $30 million in counterfeit bills. We noted also that the district court did not make the necessary particularized finding. *See Melton,* 131 F.3d at 1405–06. Finally, in reversing we stated:

We have found no indication in the record that the post-arrest metamorphosis of the original counterfeiting plan was within the scope of the criminal activity [the defendant] agreed to undertake. A defendant should not be held accountable when coconspirators substantially alter the agreed-upon plan without his knowledge or acquiescence.

*Id.* at 1405.

The situation in *Melton* was very different from this case. Here, Mr. Freeman encouraged the cheap, rapid, and illegal disposal of chemicals. In determining that the disposal on the roadways was foreseeable, the district court made the following findings:

The scope of this unlawful activity was the unlawful disposal of the chemicals at the site. While the preferred way of doing that may well have been the injection well, it was not of such overriding specificity under the facts of this case so as to render other possible exposures unforeseeable. Indeed, to the contrary, the Court finds it is abundantly foreseeable that the chromium and nickel that was being disposed of would end up in places other than down an injection well, whether at the site of the well, in transport to the well, or at the site in loading, unloading, or on the roadways. The fact that the amount on the roadways ended up being more than might be anticipated or that the amount on the roadways was the product of intentional conduct, nevertheless, keeps it within the scope of what was planned by the participants originally.

Aplt's App. 152–53 (Sentencing Tr. dated Oct. 12, 2001). The district court found that the agreement to illegally dispose of the waste neither specified a particular method of disposal, nor precluded a particular method of disposal. We hold that there is no clear error in the district court's foreseeability finding, which is a finding of fact. *See United States v. Tagore,* 158 F.3d 1124, 1129 (10th Cir.1998). The district court properly utilized the relevant conduct of Mr. Freeman's co-conspirators in calculation Mr. Freeman's offense level.

## C. USSG § 2Q1.2(b)

Mr. Freeman's second and third contentions are closely related, and we

shall consider them together. Mr. Freeman avers that the district court erred in not granting a downward adjustment in his offense level USSG §§ 2Q1.2(b)(1)(B) and 2Q1.2(b)(4), both of which focus on the method and impact of the illegal disposal of the hazardous chemicals. The application notes for these subsections indicate that downward adjustments may be appropriate if the district court determines that the resulting harm and risk warrant such an adjustment.[1]

Although we do not have jurisdiction to review to grant a downward departure when the sentencing court is aware of its power to do so with regards to the sentencing range, it is not clear whether we are similarly limited on a failure to depart downward on an offense level. Specifically, we have not determined whether we have jurisdiction to review the district court's refusal to decrease the offense level under § 2Q1.2, and the government does not argue we are without authority to do so. Because the result is the same, we need not decide the breadth of our authority in this case. See United States v. Goldsmith, 978 F.2d 643, 646 (11th Cir.1992) (implicitly suggesting jurisdiction by reviewing the district court's refusal to depart downwards in the offense level on the merits and concluding "that the district court was not clearly erroneous in finding that a two-level reduction [under § 2Q1.2] was not warranted"); United States v.

Sellers, 926 F.2d 410, 418 (5th Cir.1991) (implicitly suggesting jurisdiction by reviewing on the merits and determining that "the district court did not err in refusing to make a two level downward departure" in the offense level under § 2Q1.2).

Mr. Freeman argues that the district court was bound by certain stipulations within his plea agreement. He is correct that the government stipulated that the disposed nickel-plating waste was "hazardous" but "not toxic." Aplt's App. at 46 (Plea Agreement). The government also stipulated that the risk to humans or animals was low and that the duration of the violation was one day. Finally, the government agreed that a two-level adjustment downward would be appropriate under either § 2Q1.2(b)(1)(B) or (b)(4), but not both. The district court considered the stipulations and the request for a downward adjustment and determined that no adjustment was appropriate.

The plea agreement explicitly states that "the Court" was not bound by the above stipulations, "either as to questions of fact or as to determination of the correct sentencing guidelines to apply to the facts." Aplt's App. at 47 (Plea Agreement). This is consistent with USSG § 6B1.4(d) (policy statement) which provides that "[t]he [sentencing] court is not bound by the stipulation[s]" contained in a plea agreement. "Rather, in determining the factual basis

---

1. Application notes five and eight of USSG § 2Q1.2 read:

Subsection (b)(1) assumes a discharge or emission into the environment resulting in actual environmental contamination. A wide range of conduct, involving the handling of different quantities of materials with widely differing propensities, potentially is covered. Depending upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with

the violation, *a departure of up to two levels in either direction from the offense levels prescribed in these specific offense characteristics may be appropriate.*
Subsection (b)(4) applies where the offense involved violation of a permit, or where there was a failure to obtain a permit when one was required. Depending upon the nature and quantity of the substance involved and the risk associated with the offense, *a departure of up to two levels either upward or downward may be warranted.*
(Emphasis added).

for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information." USSG § 6B1.4, comment. (para.3). The district court, in making its factual findings, considered the quantity, nature, and duration of the offense, and observed that Mr. Freeman only avoided an upward adjustment by pure happenstance. *See* Aplt's App. at 167 (noting that, had the concentrations of hazardous waste been higher, "an upward departure on this ... provision ... would be appropriate."). We hold that the district court's factual findings are not clearly erroneous and the district court did not err when it determined Mr. Freeman was not entitled to a downward adjustment in his offense level.

### D. Aberrant Behavior

 Mr. Freeman also objects to the district court's refusal to grant a downward departure from the sentencing guidelines. At the sentencing hearing, Mr. Freeman argued that a downward departure was warranted in his case based on the aberrant nature of his criminal offense conduct. *See United States v. Jones*, 158 F.3d 492, 500 (10th Cir.1998) (considering aberrant conduct as a "mitigating factor in a downward departure decision").

We "cannot exercise jurisdiction to review a sentencing court's refusal to depart from the sentencing guidelines except in the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant." *United States v. Castillo*, 140 F.3d 874, 887 (10th Cir.1998). The sentencing court considered Mr. Freeman's arguments and acknowledged that it did have authority to consider his conduct as a factor in a departure decision. Even Mr. Freeman does

not suggest that the district court failed to recognize its ability to depart downward. Therefore, we lack jurisdiction to review the court's refusal to depart from the applicable sentencing guideline range.

For the reasons stated above, we AFFIRM the district court's decision to attribute the relevant conduct of Mr. Freeman's co-conspirators to Mr. Freeman's offense level. We AFFIRM the district court's decision not to grant Mr. Freeman a two-level reduction in his offense level and, as to the district court's decision refusing to depart downward, we DISMISS this appeal.