**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOHN P. SMITH,

      Defendant-Appellant.

No. 00-3321

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 99-CR-20059-KHV)

Michael Lewis Harris, Assistant Federal Public Defender, Kansas City, Kansas,
for Defendant-Appellant.

Robin D. Fowler, Assistant United States Attorney (Jackie N. Williams, United
States Attorney, and Nancy Landis Caplinger, Assistant United States Attorney,
with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

Before **EBEL**, **HOLLOWAY** and **LUCERO**, Circuit Judges.

**EBEL**, Circuit Judge.

      Defendant-Appellant John Smith pleaded guilty to possession of

pseudoephedrine, one of the ingredients that may be used to make

methamphetamine, and was sentenced under the guideline for attempt to

manufacture methamphetamine.  He argues that there was insufficient evidence that he had attempted to manufacture methamphetamine.  We uphold the district court's finding and therefore AFFIRM.

## BACKGROUND

The underlying facts in this case are not disputed.  John Smith's girlfriend was in a car accident.  The towing company reported a possible methamphetamine lab in the vehicle.  DEA agents searched the car and found several jugs full of a milky substance with white sediment at the bottom, two glass cooking pans, a bottle of butane, coffee filters, and a digital scale.  The milky substance contained more than 194 grams of pseudoephedrine, one of the main ingredients needed to manufacture methamphetamine using the ephedrine reduction method.[1]  One step

---

[1]The Eighth Circuit recently summarized this method:

Through a number of chemical reactions, the pseudoephedrine is extracted from the binding material of [] cold medicines, then chemically altered to become meth. Other chemicals are also employed at each stage of the reactions (including methanol, acetone, muriatic acid, lye, etc.), but iodine, phosphorous and pseudoephedrine are the key components necessary to the ephedrine reduction method.

United States v. Hollingsworth, — F.3d —, — n.2, 2001 WL 849208 (8th Cir. 2001).

in this manufacturing process is to crush pseudoephedrine pills and soak them in water.

Also in the car were sales receipts for distilled water, fuel, solvent, filters, aluminum foil, acetone, and pickles. On the basis of these receipts, DEA agents obtained a surveillance video from a local Wal-Mart showing Smith buying the aluminum foil, a gallon of Coleman camp fuel, and a jar of pickles. All of these products have a role in the manufacturing process for methamphetamine. Even pickle jars have a role; they are commonly used as "improvised glassware."

DEA agents also found a handwritten note with telephone numbers for Brookside and Kalo, two businesses that distribute chemicals. Brookside sells iodine and red phosphorus, the other principle ingredients needed to make methamphetamine; it is unknown whether Kalo sells these products, as well. The note also contained a list of "need[s]" and "want[s]" that seemed unrelated to manufacturing methamphetamine, including, for example, mascara, throwing knives, and a dart board.

The agents did not find any evidence in the car of iodine, red phosphorus, sodium hydroxide, hydrochloric acid, or siphoning equipment, all of which are used in the ephedrine-reduction method of manufacturing methamphetamine. There is also no evidence that Smith had a recipe for manufacturing methamphetamine. In 1998, however, Smith was arrested for running a

methamphetamine lab and was caught with red phosphorus, iodine, sodium hydroxide, and rubber tubing.

Smith pleaded guilty in this case to possessing pseudoephedrine (a "listed chemical") knowing or having reasonable cause to believe that it would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2). The relevant Sentencing Guideline for possessing a listed chemical (such as pseudoephedrine) is § 2D1.11. In Smith's case, his base offense level under § 2D1.11 for 194 grams of pseudoephedrine would be 18. That guideline provides, however, that "[i]f the offense involved . . . attempting to manufacture a controlled substance unlawfully, apply § 2D1.1 . . . if the resulting offense level is greater than" the level under § 2D1.11. See U.S.S.G. § 2D1.11(c)(1) & application note 2. The PSR determined that Smith was attempting to manufacture methamphetamine, a controlled substance, and therefore applied the cross-reference to § 2D1.1. Using a conservative 50% conversion rate, the PSR found that Smith could have produced 89.7 grams of pure methamphetamine from the pseudoephedrine found in Smith's car, for a base offense level of 30 under the Sentencing Guidelines in effect at the time of Smith's crime.

Smith objected to the application of § 2D1.1 instead of § 2D1.11. The district court overruled this objection and sentenced him to 92 months' imprisonment. On appeal, Smith argues that his actions were not an attempt to

- 4 -

manufacture methamphetamine and therefore the application of § 2D1.1 was incorrect.

## DISCUSSION

The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction to review the sentence under 18 U.S.C. § 3742(a). We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error. United States v. Arevalo, 242 F.3d 925, 927 (10th Cir. 2001). We must "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e).

To prove an attempt to manufacture methamphetamine, the government must show "(1) intent to manufacture methamphetamine, and (2) commission of an act which constitutes a substantial step towards commission of the substantive offense." United States v. Becker, 230 F.3d 1224, 1234 (10th Cir. 2000), cert. denied, 121 S. Ct. 1666 (2001). Because the main dispute on appeal is whether Smith's actions constituted a substantial step toward manufacturing methamphetamine, we discuss that prong first.

A.  Substantial Step

The "substantial step" question appears to be a factual one, or at least one regarding the application of the guidelines to a particular set of facts.  See United States v. Neal, 78 F.3d 901, 906 (4th Cir. 1996) ("Whether conduct represents a substantial step depends on the surrounding factual circumstances and, therefore, such determinations are necessarily fact specific." (quotation marks omitted)); United States v. Montanye, 996 F.2d 190, 191 (8th Cir. 1993) ("Whether a defendant's conduct amounts to a substantial step necessarily depends on the facts of each case.").

> The "substantial step" required to establish an attempt must be something beyond mere preparation.  It must be an act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime.  A substantial step is an appreciable fragment of a crime and an action of such substantiality that, unless frustrated, the crime would have occurred. The step must be strongly corroborative of the firmness of the defendant's criminal intent and must unequivocally mark the defendant's acts as criminal.  It should evidence commitment to the criminal venture.  However, it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . .
> The dividing line between preparation and attempt is not clear and depends to a high degree on the surrounding factual circumstances.

United States v. DeSantiago-Flores, 107 F.3d 1472, 1478-79 (10th Cir. 1997) (quotation marks, alterations, and citations omitted), overruled on other grounds by United States v. Holland, 116 F.3d 1353 (10th Cir. 1997).

We have stressed that a defendant need not possess a full "working lab" to be convicted of attempting to manufacture methamphetamine. United States v. Leopard, 936 F.2d 1138, 1141 (10th Cir. 1991). Thus, in Leopard, we affirmed a conviction for attempting to manufacture methamphetamine even though the defendant did not have heat, aluminum foil, and distillation equipment, "items that are relatively generic and easily available when compared to the extensive array of sophisticated chemicals and equipment" that the defendant did have. Id. In United States v. Becker, 230 F.3d 1224 (10th Cir. 2000), the defendant possessed a recipe for the "hot" method of making methamphetamine and some (but not all) of the ingredients for that process, as well as most of the ingredients (but not a recipe) for the "cold" method. Id. at 1234. We found this evidence sufficient to support a conviction for attempting to manufacture methamphetamine, because "[m]any of the materials necessary for manufacturing methamphetamine were present, and it is not necessary for every chemical matching each recipe to be present." Id.

Becker and Leopard hold that assembling some (but not all) of the necessary equipment and ingredients can support a conviction for attempting to manufacture methamphetamine, depending on the degree of such assembly. Here, in addition to assembly, the first step of the manufacturing process, i.e., soaking the ground-up pseudoephedrine tablets in water, had already begun. Although

- 7 -

Smith had yet to acquire some of the ingredients he would need later in the process, the evidence indicated that these additional items were not difficult to obtain, and that Smith had telephone numbers for two places where he might have been able to purchase them. In Becker, we also found it significant that there was evidence contradicting the defendant's proffered justification for possessing the materials. 230 F.3d at 1234. Here, likewise, it was reasonable for the district court to reject Smith's contention that he was merely making pure pseudoephedrine to sell to some other manufacturer of methamphetamine. In particular, the receipt for Coleman fuel, which is used near the end of the ephedrine-reduction process, casts doubt on this assertion. Although there are numerous legitimate uses for Coleman fuel, it provides some evidence that in the "likely course of things" Smith would have manufactured methamphetamine. Giving deference to the district court's determinations, we conclude the court did not err in finding that Smith had taken a substantial step toward manufacturing methamphetamine.

At oral argument, the Assistant Federal Public Defender asked us to establish a bright-line rule as to what constitutes a substantial step toward manufacturing methamphetamine. While we are sympathetic to his desire to be better able to counsel clients about their expected sentences, we do not believe a bright-line rule is appropriate. Whether the defendant has taken a substantial step

is a heavily fact-specific question. Here, we hold only that it is not necessary as a matter of law to show that the defendant actually possessed all the needed precursor chemicals and that the district court did not err in finding a substantial step on the facts of this case.

B. Intent

Smith also objects that there was insufficient evidence that he intended to manufacture methamphetamine. "Intent and knowledge, however, can be inferred from surrounding circumstances." Leopard, 936 F.2d at 1141. Thus, in Leopard, the defendant's attempt to purchase most of the necessary ingredients was enough to allow a jury to infer beyond a reasonable doubt that he intended to manufacture methamphetamine. The evidence discussed above could give rise to an inference that Smith intended to manufacture methamphetamine. The district court did not clearly err in so finding.

## CONCLUSION

We AFFIRM Smith's sentence.