**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 2 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ROBERT TURNER,

    Defendant - Appellant.

No. 01-3049

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 99-CR-10023-04)**

---

Paul S. McCausland of Young, Bogle, McCausland, Wells & Blanchard, P.A., Wichita, Kansas, for Defendant-Appellant.

Alan G. Metzger, Assistant United States Attorney (James E. Flory, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee.

---

Before **TACHA**, Chief Judge, **PORFILIO** and **BRISCOE**, Circuit Judges.

---

**PORFILIO**, Senior Circuit Judge.

A jury convicted Robert Turner of interference with commerce arising from two robberies in violation of 18 U.S.C. § 1951 and for using or carrying a firearm during and in relation to these two crimes of violence in violation of 18 U.S.C. § 924(c)(1)(A). A

partial latent left thumbprint found at the scene of the second robbery was the only physical evidence linking Mr. Turner to the two crimes. At sentencing, the court determined Mr. Turner had two prior felony convictions for "crimes of violence," as defined in the United States Sentencing Commission Guidelines Manual (USSG) § 4B1.2(a) (2000), and therefore sentenced him as a career offender under USSG § 4B1.1 (2000). We have jurisdiction over Mr. Turner's appeal pursuant to 28 U.S.C. § 1291. Our jurisdiction to review Mr. Turner's sentence arises under 18 U.S.C. § 3742(a).

Mr. Turner raises two issues in this court. First, he contends the district court erred in admitting Detective McNutt's fingerprint identification evidence without making on-the-record *Daubert* findings on the reliability of the underlying science and methods employed by Detective McNutt. Second, Mr. Turner argues the district court erred in finding his prior conviction for aggravated escape a "crime of violence" for purposes of the career offender guideline, USSG § 4B1.1 (2000). For the reasons set forth below, we affirm.

## BACKGROUND

After midnight on September 1, 1998, two men entered a Food-4-Less supermarket in Wichita, Kansas; one of the two carried a handgun. They demanded money, received it, and fled. On September 4, 1998, two men ate dinner at a Furr's Cafeteria in Wichita, Kansas. They were the only remaining customers when the restaurant closed. Shortly thereafter, these two men, this time both armed with handguns, robbed Furr's.

Officer Patrick Cunningham, a Wichita Police Department lab scene investigator, responded to Furr's reported robbery. He employed the powder-and-brush method to lift and preserve, for later examination, a smudged partial latent left thumbprint from a "greasy plate with chicken crust." Officer Cunningham retrieved the plate from a busman's cart containing dishes cleared from the booth where the two robbers ate.

During discovery, the government produced a fingerprint identification report matching the partial latent left thumbprint lifted by Officer Cunningham to a known left thumbprint of Mr. Turner. Mr. Turner subsequently filed a pretrial motion for a ***Daubert*** hearing and to exclude the fingerprint identification evidence. He attached to his motion two submissions: a Model Brief questioning the uniqueness of fingerprints, prepared by the Federal Public Defender's Office for the Eastern District of Pennsylvania, and a National Institute of Justice Solicitation, issued in March 2000, seeking proposals for fingerprint research studies.[1] At a pretrial hearing on Mr. Turner's ***Daubert*** motion, and after reviewing the two submissions, the district court denied the motion and overruled Mr. Turner's objection to the admission of fingerprint evidence at trial.

Detective Jim McNutt, a latent fingerprint examiner for the Sedgwick County Sheriff's Department, testified at trial on behalf of the government.[2] He indicated he has

---

[1] United States Department of Justice, National Institute of Justice Solicitation, Forensic Friction Ridge (Fingerprint) Examination Validation Studies (Mar. 2000), *available at* http://www.ojp.usdoj.gov/nij/fund2000exp.htm (last modified Dec. 19, 2001). This NIJ Solicitation is listed as expired for fiscal year 2000. ***Id.***

[2] Detective McNutt's training includes over eighty hours in three FBI schools

(continued...)

compared fingerprints on "probably thousands" of occasions. Detective McNutt described the two basic premises underlying a fingerprint examiner's identification opinion: that fingerprints are unique to an individual and are permanent. He also testified about the physical characteristics of fingerprints and what he called the "three levels of detail" he examines in comparing a latent print to a known print. Detective McNutt explained he and a Wichita Police Department fingerprint examiner "always verify each others' work," and they did so in this instance.

At the conclusion of his testimony, Detective McNutt stated the partial latent print found on the Furr's plate contained sufficient detail to make a conclusion, beyond any doubt, the latent print matched Mr. Turner's left thumbprint. Counsel for Mr. Turner cross-examined Detective McNutt. Mr. Turner did not offer his own fingerprint expert. The jury found Mr. Turner guilty of using or carrying a firearm during and in relation to the Food-4-Less and Furr's Cafeteria robberies.

## I.

We review for abuse of discretion both the denial of a *Daubert* hearing, *United States v. Nichols*, 169 F.3d 1255, 1262-63 (10th Cir. 1999), and the district court's decision whether to admit or exclude expert testimony. *Kumho Tire Co. v. Carmichael*,

---

(...continued)
focusing on fingerprint classification development and identification. He also attended two other schools, one in advanced palm print identification, and another in advanced ridgeology comparison techniques. Detective McNutt is a member of the International Association for Identification (IAI) and is a certified IAI latent print examiner.

526 U.S. 137, 152 (1999) (*citing* **General Elec. Co. v. Joiner**, 522 U.S. 136, 138-39 (1997)). "An abuse of discretion occurs where the district court clearly erred or ventured beyond the limits of permissible choice under the circumstances." **Wright Trust Co. of Kan. v. Abbott Labs., Inc.**, 259 F.3d 1226, 1233 (10th Cir. 2001) (*citing* **Deters v. Equifax Credit**, 202 F.3d 1262, 1268 (10th Cir. 2000)).

At the time of the district court's pretrial ruling, July 5, 2000, Fed. R. Evid. 702 provided: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."[3] Under Rule 702, the district judge must act as a gatekeeper to ensure proffered expert testimony is relevant and reliable. **Daubert v. Merrell Dow Pharms., Inc.**, 509 U.S. 579, 589 (1993).[4]

---

[3] Federal Rule of Evidence 702 was amended, effective December 1, 2000. *See* Fed. R. Evid. 702 advisory committee notes, 2000 Amendments.

[4] **Daubert v. Merrell Dow Pharms., Inc.**, set forth a flexible framework for analyzing the evidentiary reliability of scientific evidence and its admissibility under Fed. R. Evid. 702. 509 U.S. 579, 593-95 (1993). The court may consider whether the technique "can be (and has been) tested"; "whether the theory or technique has been subjected to peer review and publication"; "the [technique's] known or potential rate of error . . . and the existence and maintenance of standards controlling the technique's operation"; and "general acceptance." **Id.** at 593-94. This analysis "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." **Kumho Tire Co. v. Carmichael**, 526 U.S. 137, 141 (1999) (*citing* Fed. Rule Evid. 702).

"*Daubert* challenges, like other preliminary questions of admissibility, are governed by Fed. R. Evid. 104." *Nichols*, 169 F.3d at 1263 (*citing Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 603 (10th Cir. 1997)).[5] The district court has "no discretion regarding the actual *performance* of the gatekeeper function." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) (*citing Kumho Tire Co.*, 526 U.S. at 158-59) (Scalia, J., concurring) and *United States v. Velarde,* 214 F.3d 1204, 1209 (10th Cir. 2000) (Anderson, J.)). However, the district court possesses "latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability." *Kumho Tire Co.*, 526 U.S. at 152. "The most common method for fulfilling [the gatekeeper function] is a *Daubert* hearing, although such a process is not specifically mandated." *Goebel*, 215 F.3d at 1087 (citations omitted).

In this case, the transcript from the pretrial hearing on Mr. Turner's *Daubert* motion suggests the district court considered fingerprint evidence an "ordinary case[]" where the reliability of an expert's methods is properly taken for granted." *Kumho Tire Co.*, 526 U.S. at 152. In denying the motion, the court explained:

> [W]ith respect to the fingerprint evidence and *Daubert*, I'm not going to
> have a . . . hearing. . . . I have reviewed your brief . . . as well as the model
> brief . . . and fingerprint evidence, as far as I can tell, has always been
> upheld as reliable and appropriate. If there are any problems with it, those

---

[5] Federal Rule of Evidence 104(c) provides that "[h]earings on . . . preliminary matters shall be . . . conducted [out of the hearing of the jury] when the interests of justice require."

can be raised in cross examination of the government's witness. . . . [T]he Tenth Circuit has found, albeit in dicta, that fingerprint evidence is reliable. . . . But a *Daubert* hearing is discretionary with the court. I have reviewed your motion and brief and I'm denying that motion.

In so stating, the district court relied on our observation in ***Williamson v. Ward***: "It is undisputed that hair analysis, unlike fingerprint identification and DNA analysis, is not conclusive." 110 F.3d 1508, 1520 n.13 (10th Cir. 1997). The district court also instructed Mr. Turner's counsel he could cross-examine the government's fingerprint expert at trial to determine if there was "some problem with the way [fingerprint identification] was done in this case." In conducting our review on appeal, this colloquy is all with which we have to work. The district court did not make any detailed findings concerning the admissibility of Detective McNutt's opinion Mr. Turner's fingerprint was on the Furr's plate.

Having reached this point, however, we believe resolution of whether the district court properly carried out its gatekeeping function would be merely academic. This is because the consequence of error in the admission of Detective McNutt's testimony is, at worst, harmless, and Mr. Turner's conviction can be affirmed. *See **Kinser v. Gehl Co.**,* 184 F.3d 1259, 1272 (10th Cir. 1999) (holding improper admission of expert testimony "ultimately was harmless"), *abrogated on other grounds, **Weisgram v. Marley Co.**,* 528 U.S. 440 (2000); *cf. **Velarde**,* 214 F.3d at 1211-12 (finding admission of expert testimony without fully considering ***Daubert*** factors not harmless because "little other evidence" suggested sexual abuse had occurred).

When conducting a harmless error analysis, the appellate court must review the record as a whole. *United States v. McVeigh*, 153 F.3d 1166, 1204 (10th Cir. 1998) (citations omitted). "The question is not whether, omitting the inadmissible [expert testimony] the record contains sufficient evidence for a jury to convict the defendant." *United States v. Tome*, 61 F.3d 1446, 1455 (10th Cir. 1995). Rather, an error is harmless "unless a substantial right of [a] party is affected." Fed. R. Evid. 103(a). "[A]n error affecting a substantial right of a party is an error which had a substantial influence on the outcome or [which] leaves one in grave doubt as to whether it had such effect." *United States v. Charley*, 189 F.3d 1251, 1270 (10th Cir. 1999) (internal quotations and citations omitted). "The burden of proving that an error is harmless falls on the government." *Id*. at 1271 (*citing **United States v. Rivera**,* 900 F.2d 1462, 1469 n.4 (10th Cir. 1990)).

The government maintains the Model Brief attached to Mr. Turner's pretrial motion for a *Daubert* hearing cites various forensic science articles and learned treatises, which, if read by the district court in the course of a hearing, would have satisfied *Daubert* and paved the way to the admission of Detective McNutt's testimony. This, however, is a misapplication of the harmless error analysis.

When we undertake resolution of issues in cases having limited findings by the district court, we will not make those findings ourselves.[6] That function is not within the

---

[6] While we could surmise the basis of the district court's ruling here, that would be an inappropriate approach. Nevertheless, we suggest to the district court it could have been more precise in its findings to support the denial of a *Daubert* hearing. Such

(continued...)

scope of appellate review.  "[W]e do not make independent findings of reliability; rather, we examine the record evidence presented to the district court, and decide whether the district court's decision, in the face of that record evidence, to allow the testimony to be admitted was an abuse of discretion." *Velarde*, 214 F.3d at 1210 n.5 (*citing* **Charley**, 189 F.3d at 1261 n.10).  Instead of performing the gatekeeping function assigned to the district court, we must look to "other competent evidence" and determine whether it is "'sufficiently strong' to permit the conclusion that the improper evidence had no effect on the decision." *Lillie v. United States*, 953 F.2d 1188, 1192 (10th Cir. 1992) (citation omitted).

Regarding the Food-4-Less supermarket robbery, testimony of the night manager, Donald Mitchell, was sufficiently strong by itself to uphold Mr. Turner's conviction for that robbery.  The evidence pertinent to the Furr's Cafeteria robbery includes the testimony of William Turner, the defendant's older brother.  William Turner testified the defendant wrote a letter to him after the defendant was arrested for the two robberies and asked him to lie about an alibi.  William Turner testified that in this letter the defendant referred to the Wichita, Kansas, robberies as "our" robberies.  Other evidence placed Mr. Turner in Wichita on the date of the Furr's robbery, in the company of an individual matching the description of the second robber, and accompanied by a woman who drove a vehicle identified as the get-away car in both crimes.  We believe when all this evidence

---

[6](...continued)
precision greatly facilitates review by this court.

is added together the sum is sufficiently strong so that the arguably improper admission of Detective McNutt's testimony did not affect Mr. Turner's substantial rights.

## II.

"We review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error." *United States v. Smith*, 264 F.3d 1012, 1015 (10th Cir. 2001) (*citing United States v. Arevalo*, 242 F.3d 925, 927 (10th Cir. 2001)). "We must 'give due deference to the district court's application of the guidelines to the facts.'" *Smith*, 264 F.3d at 1015 (*citing* 18 U.S.C. § 3742(e)).

Mr. Turner's sentence was enhanced because the district court treated his 1992 plea of guilty to a felony charge of aggravated escape as a "crime of violence" for purposes of the career offender guideline, USSG § 4B1.1 (2000).[7] On appeal, Mr. Turner argues his conviction for aggravated escape does not qualify as a "crime of violence" under USSG § 4B1.2(a) (2000). He contends he merely "failed to return to a halfway house from work release."

Whether a defendant is a career offender for sentencing purposes is determined by the sentencing court, pursuant to USSG § 4B1.1 (2000), which in pertinent part, provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of

---

[7] We apply the United States Sentencing Commission Guidelines Manual in effect on the date the district court sentenced the defendant. *United States v. Moudy*, 132 F.3d 618, 620 n.1 (10th Cir. 1998) (*citing* USSG § 1B1.11(a) (1995)). The court sentenced Mr. Turner on February 27, 2001. The 2000 version of the Manual was then in effect.

conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense . . . .

A "crime of violence" is:

(a) . . . any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or* otherwise involves conduct that presents a serious *potential risk* of physical injury to another.

USSG § 4B1.2(a) (2000) (emphasis added).

Mr. Turner contends Kansas law distinguishes between an escape effected by or facilitated by violence, versus a simple escape, and this court should defer to Kansas' distinction.[8] We disagree. "We have held categorically that an escape always constitutes

---

[8] In 1992, when Mr. Turner escaped, the elements of aggravated escape under Kansas law read:
Aggravated escape from custody is:
(a) Escaping while held in lawful custody upon a charge or conviction of felony; or
(b) Escaping while held in custody on a charge or conviction of any crime when such escape is effected or facilitated by the use of violence or the threat of violence against any person.
Aggravated escape from custody is a class E felony.
Kan. Stat. Ann. § 21-3810 (1992) (current version at Kan. Stat. Ann. § 21-3810 (2000)). According to Mr. Turner's brief on appeal, Kansas charged him under Kan. Stat. Ann. § 21-3810(a) (1992), "[he] plead guilty to a class E felony," and said felony "was converted to a severity level 8, non-person felony in a state court order entered April 7, 1998."

conduct that presents a serious potential risk of physical injury to another, for the purposes of the . . . career offender provisions of the sentencing guidelines." *United States v. Springfield*, 196 F.3d 1180, 1185 (10th Cir. 1999) (internal quotations and citations omitted). Even though initial circumstances of an escape may be non-violent, there is no way to predict what an escapee will do when encountered by the authorities. Every escape is "a powder keg, which may or may not explode into violence." *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994)). We conclude the district court did not err in finding Mr. Turner's prior conviction for aggravated escape a "crime of violence," USSG § 4B1.2(a) (2000), for purposes of the career offender guideline, USSG § 4B1.1 (2000).

## CONCLUSION

Any error committed by the district court in denying Mr. Turner's *Daubert* motion was harmless. We thus leave the issue of whether a district court is obliged to conduct a *Daubert* hearing to qualify properly a fingerprint expert to another case in which the issue can stand on its own. Additionally, the district court, in accord with our precedent, properly determined Mr. Turner's prior conviction for escape a "crime of violence." The judgment of the United States District Court for the District of Kansas is **AFFIRMED**.