F I L E D
United States Court of Appeals
Tenth Circuit

NOV 4 2003

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROBERT RAMIREZ,

Defendant - Appellant.

No. 02-2227

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR-00-1424-JC)

Bernadette Sedillo, Las Cruces, New Mexico, for Defendant-Appellant.

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **EBEL** , **ANDERSON** and **HARTZ** , Circuit Judges.

**ANDERSON** , Circuit Judge.

Defendant and appellant Robert Ramirez was convicted following a jury

trial on two counts of a fifteen-count indictment: (1) conspiracy to possess with

the intent to distribute fifty grams or more of methamphetamine, less than fifty kilograms of marijuana and less than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)-(C) and 21 U.S.C. § 846 (count I); and (2) attempt to possess with intent to distribute more than fifty grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 21 U.S.C. § 846 (count XII). He filed a motion for judgment of acquittal, which the district court denied. The court subsequently sentenced him to 151 months incarceration, followed by ten years of supervised release. Ramirez appeals the denial of his motion for judgment of acquittal, arguing there was insufficient evidence to sustain his conviction on either count and arguing the court erred in permitting an agent to offer what Ramirez characterizes as expert testimony without the proper foundation. We affirm.

## BACKGROUND

In late 1999 and early 2000, state and federal law enforcement authorities began investigating a drug trafficking organization based in Roswell, New Mexico, and run by one of Ramirez's co-defendants in this case, Arturo Natera. At trial, members of the drug conspiracy testified about various drug transactions

they did for Arturo. [1]  Additionally, as a part of the investigation, New Mexico State policeman Albert Mora, acting undercover, purchased narcotics from members of the conspiracy on several occasions.  FBI agents also obtained court orders to install wiretaps on two cellular phones belonging to Arturo.  One phone was monitored from August 31, 2000, until October 24, 2000, and the other from September 8, 2000, until October 24, 2000.

With respect to Ramirez, the testimony at trial revealed the following:  On July 24 a confidential informant contacted Ramirez about purchasing a half pound of methamphetamine.  Ramirez and the informant then spoke on the telephone with undercover agent Mora.  The informant and Agent Mora went to Arturo's house, picked up Ramirez and drove to a restaurant, Tijuana's, in Roswell.

While en route to Tijuana's Restaurant, Ramirez received a phone call. Ramirez then asked Mora with whom he (Mora) had been dealing drugs in the past.  Mora told Ramirez that he had been buying drugs from a man named Jose Aguirre.  While at the restaurant, Ramirez told Agent Mora that he worked for a man named "Art" and that Ramirez could obtain marijuana, cocaine, or methamphetamine for Mora.  When Agent Mora, Ramirez and the informant left the restaurant, Ramirez told Mora that, "I'm good to go, that [I]'ll go ahead and

---

[1]Specifically, Abel Henry Juaregui, James Bruce Henry, Leta Quesada and Jeannine Sena testified.

continue to do the half-pound narcotics transactions that we had discussed at the restaurant." R. Vol. XIII at 718. Ramirez told Mora that the drug transaction would occur that evening at Miguel's Restaurant in Roswell, and that Ramirez would call Agent Mora to tell him the exact time for the sale. [2]

Ramirez subsequently called Mora that evening to tell him that he had changed the location of the sale from Miguel's Restaurant to a motel room in Roswell. Mora told Ramirez he would call Ramirez back. After discussing the change in location with the other members of his drug task force, Agent Mora decided not to go through with the drug purchase at the motel because of safety concerns. [3] As a result, the proposed drug transaction never took place.

Agent Mora continued to operate as an undercover agent with the Natera drug ring following the failed drug sale. On October 12, Agent Mora met Joe Cobos and Ramirez in a liquor store in Roswell. Mora told Cobos he was interested in purchasing methamphetamine. Cobos told Mora that Ramirez could provide Mora with the drugs he (Mora) sought to buy, and he told Mora to deal

---

[2]Ramirez's nickname was "Pelos" and many references in the record are to Pelos.

[3]Agent Mora testified that he considered motel rooms unsafe locations for undercover operations because the undercover officer may be outnumbered by the drug dealers. Additionally, the confidential informant was not comfortable participating in the drug transaction at the motel.

-4-

with Ramirez.  Ramirez said, "he could help me out but wouldn't discuss anything in detail and advised me to give him a call on his cell phone."     Id. at 730.

The next day, Mora and Ramirez made arrangements for a drug transaction, which apparently did not occur because, in the interim, Ramirez, Cobos and Arturo Natera discovered that Mora was either an informant or an undercover policeman.  This information was revealed through the wiretaps on Natera's cell phones:  agents who were monitoring the wiretaps on the cell phones told Agent Mora that he had been identified as either an agent or a narcotics officer.  In an intercepted phone conversation between Ramirez and Arturo Natera, Arturo said to Ramirez, "do you remember that guy, that – that I told you to go to the hotel that day?"  Id. at 733.  Ramirez responded, "that bastard that did me wrong?"     Id. at 734.  After first recalling the name Becerra or Barraza, [4] Ramirez then remembered, ". . . no . . . no . . . the guy with whom he was that day when I went to talk to him . . . at Tijuana's." Mem. Op. and Order at 4, R. Vol. I tab 334.     [5] When asked at trial to whom he believed Ramirez was referring in that conversation, Agent Mora testified that he believed Ramirez was referring to Mora "[b]ecause I did not show up at the motel that night."  R. Vol. XIII at 734.

---

[4]The confidential informant was Pete Becerra.

[5]The tape of the phone call was played for the jury and parts of it were read aloud and appear in the trial transcript.  We refer to the trial transcript for those parts.  For the remainder we refer to the district court's order which quoted from excerpts of the tape in its denial of Ramirez's motion for acquittal.

As discussed more fully below, Ramirez argues the court erred in permitting Agent Mora to express his opinion as to the identity of the "guy" being discussed by Natera and Ramirez, and he further argues that Agent Mora was wrong in his assertion that the "guy" was Mora himself.

On October 27, 2000, a federal grand jury returned a fifteen-count indictment against Ramirez, a/k/a "Pelos," and thirteen others, charging them with violations of various narcotics laws. As indicated, Ramirez was charged with Counts I and XII. Count I charged all defendants with conspiring to possess methamphetamine, marijuana and cocaine with the intent to distribute, in violation of 21 U.S.C. § 846, and it alleged twenty-three overt acts in furtherance of the conspiracy. Count XII charged Ramirez with attempting to possess more than fifty grams of methamphetamine with the intent to distribute it. Ramirez pled not guilty.

Ramirez and three co-defendants, Arturo Natera, Joe Cobos and Marcos Natera, were tried before a jury. [6] The jury found Ramirez guilty of both counts. The court denied his subsequent motion for judgment of acquittal. Ramirez appeals, arguing: (1) there is insufficient evidence to sustain the conviction for attempting to possess methamphetamine with the intent to distribute; (2) it was

---

[6]Eight co-defendants pled guilty pursuant to plea agreements and two defendants are fugitives.

reversible error to admit the testimony by Agent Mora on his interpretation of the wiretapped phone calls and the person to whom Ramirez referred in those phone calls; and (3) there was insufficient evidence to sustain the conviction for conspiracy to possess with intent to distribute more than fifty grams of methamphetamine, less than fifty kilograms of marijuana and less than 500 grams of cocaine.

**DISCUSSION**

We review de novo the district court's denial of a motion for a judgment of acquittal. See United States v. Bailey, 327 F.3d 1131, 1140 (10th Cir. 2003). In doing so, we view all the evidence "in the light most favorable to the government." Id. (further quotation omitted). "We must determine whether there is evidence from which a jury could find the defendant guilty beyond a reasonable doubt." Id. (further quotation omitted). We do not, however, "weigh the evidence or consider the credibility of the witnesses in making [our] determination." Id. (further quotation omitted).

Ramirez first challenges the sufficiency of the evidence supporting his conviction for attempting to possess with intent to distribute more than fifty grams of methamphetamine. The crime of attempting to possess requires the government to prove that Ramirez possessed the requisite criminal intent, as well

as the "commission of an act which constitutes a substantial step towards commission of the substantive offense." United States v. Becker, 230 F.3d 1224, 1234 (10th Cir. 2000).

> The "substantial step" required to establish an attempt must be something beyond mere preparation. It must be an act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime. A substantial step is an appreciable fragment of a crime and an action of such substantiality that, unless frustrated, the crime would have occurred. The step must be strongly corroborative of the firmness of the defendant's criminal intent and must unequivocally mark the defendant's acts as criminal. It should evidence commitment to the criminal venture.

United States v. Smith, 264 F.3d 1012, 1016 (10th Cir. 2001) (further quotation omitted). "Whether a defendant's conduct amounts to a substantial step necessarily depends on the facts of each case." Id. (further quotation omitted).

There is ample evidence that Ramirez had the requisite criminal intent, and Ramirez does not seriously contend otherwise. He argues the government failed to prove he committed a substantial step towards an attempt to possess with intent to distribute. Indeed, Ramirez argues he and Agent Mora only "talk[ed] about doing a deal . . . . there was no price negotiated and no definite meeting place or time established." Appellant's Br. at 15. That conduct was, he asserts, mere preparation, and preparation does not constitute a substantial step.

It is true that the substantial step required for an attempt conviction "must be something beyond mere preparation." Smith, 264 F.3d at 1016 (further

-8-

quotation omitted).  Ramirez committed such a substantial step in this case.  He met with Mora and discussed the amount to be purchased and agreed upon a place and a general time for the drug transaction.  He then changed the location, from a restaurant to a more secluded location of his choosing, a motel.  Furthermore, the wiretapped phone call, while somewhat cryptic, can reasonably be interpreted as indicating that Ramirez subsequently went to the motel and Mora did not. [7] Ramirez's conduct in (1) agreeing upon a general time and place and then changing to a specific location where he would bring the agreed upon narcotics and (2) going to the agreed location is "an act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime."  Id. (further quotation omitted).  Indeed, it is a reasonable inference that but for Mora's decision not to go through with the transaction because it would be too dangerous at the motel, the drug deal would likely have taken place. Given that we must view the evidence in the light most favorable to the government, considering whether any rational trier of fact could find the essential elements of the crime, we conclude there was sufficient evidence

_____

[7]Ramirez argues the conversation on the tape cannot be interpreted as indicating that Mora is the "bastard that done me wrong" by not showing up at the motel.  We disagree.  The jury could reasonably infer that from the conversation on the tape.  That may not be the only possible inference but it is certainly a reasonable inference.

supporting Ramirez's conviction for attempting to possess with intent to distribute.

Ramirez next argues that "the erroneous admission of expert testimony by a lay witness constitutes reversible error." Appellant's Br. at 16. He alleges that Agent Mora was erroneously permitted to testify as an expert about the content of the wiretapped phone calls, when he was not qualified to so testify. We disagree. Initially, we note that Ramirez did not object on that basis in the district court. When the prosecutor asked Agent Mora whom he thought was the subject of the phone conversation between Ramirez and Natera, defense counsel stated, "[o]bjection, speculation, for a conversation that he was not even a part of." R. Vol. XIII at 734. Ramirez did not object on the basis that Mora was offering an expert opinion and was not properly qualified to offer such an opinion. "The specific ground for reversal of an evidentiary ruling on appeal must . . . be the same as that raised at trial. Unless a defendant makes a timely and proper objection, the alleged error cannot be raised on appeal unless it constitutes plain error resulting in manifest injustice." United States v. Norman T., 129 F.3d 1099, 1106 (10th Cir. 1997) (further citations and quotations omitted). Accordingly, we review the admission of Agent Mora's testimony on the phone calls only for plain error.

We perceive no error in the admission of Agent Mora's opinion as to who was being discussed in the phone call, let alone a plain error. Agent Mora's

-10-

opinion on the identity of the individual being discussed on the phone is not the kind of expert testimony subject to Fed. R. Evid. 702. Given his familiarity with Ramirez, Natera and their drug ring, it was not improper to permit Agent Mora to express his opinion about the phone call.

Finally, Ramirez argues there was insufficient evidence supporting his conviction for conspiracy to possess with intent to distribute fifty grams or more of methamphetamine, less than fifty kilograms of marijuana and less than 500 grams of cocaine. To support a conviction for conspiracy to distribute drugs, the government must show (1) "that two or more persons agreed to violate the law," (2) "that the Defendant knew at least the essential objectives of the conspiracy," (3) "that the Defendant knowingly and voluntarily became a part of it," and (4) "that the alleged coconspirators were interdependent." United States v. Ivy, 83 F.3d 1266, 1285 (10th Cir. 1996) (further quotation omitted); see also United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997). "Circumstantial evidence is sufficient to prove a conspiracy." United States v. Pretty, 98 F.3d 1213, 1218 (10th Cir. 1996); see also United States v. Brown, 200 F.3d 700, 708 (10th Cir. 1999) ("Circumstantial evidence is often the strongest evidence of conspiracy." (further quotation omitted)).

We conclude that there was sufficient evidence from which a rational fact finder could find the essential elements of conspiracy established with respect to

-11-

Ramirez. Aside from the evidence about the attempted drug transaction with Agent Mora, Jeannine Sena testified as to several occasions when Ramirez and Marcos Natera picked up quantities of both cocaine and methamphetamine, and she described situations when she observed Arturo direct Ramirez to pick up money from people who owed Arturo money. There was testimony that baggies commonly used to package drugs were seized from Ramirez's bedroom. While Ramirez tries to discredit Sena, it is not our role to examine or weigh her credibility as a witness. See United States v. Allen, 235 F.3d 482, 492 (10th Cir. 2000) ("We do not question the jury's credibility determinations or its conclusions about the weight of the evidence." (further quotations omitted)). Taking all the evidence in the light most favorable to the government, we must conclude that there is sufficient evidence supporting the conspiracy verdict against Ramirez—that he knowingly and voluntarily participated in the drug conspiracy, knowing its objectives and acting interdependently with at least several of the other participants.

For the foregoing reasons, we AFFIRM the judgment of the district court.