**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 16 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

    v.

DAVID K. HAYNES,

      Defendant - Appellant.

No. 03-2086

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-01-1225 MV)**

---

Jose R. Coronado, Las Cruces, New Mexico, for Defendant - Appellant.

Norman Cairns, Assistant United States Attorney (David C. Iglesias,
United States Attorney, with him on the brief), Albuquerque, New Mexico, for
Plaintiff - Appellee.

---

Before **KELLY** , **BRORBY** , and **HARTZ** , Circuit Judges.

---

**HARTZ** , Circuit Judge.

---

Defendant David K. Haynes was convicted of attempting to manufacture

less than five grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1)

and (b)(1)(C). He now appeals, claiming (1) that the district court improperly

admitted his statement that he knew an individual who manufactured methamphetamine and (2) that the evidence was not sufficient to support his conviction. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

At 6:30 a.m. on June 20, 2001, police officers went to the Carlsbad, New Mexico, home of Defendant, a paraplegic, to arrest him on a warrant unrelated to this matter. When they arrived, they detected a strong chemical odor, which they associated with methamphetamine production. They quickly looked through the house but found no one inside. While some officers left to obtain a search warrant, others remained to prevent anyone from entering the house. Even after obtaining a search warrant the officers were instructed not to enter the house unless they were accompanied by a site safety officer because of the danger posed by chemicals used and produced in the manufacture of methamphetamine. At about 1:00 or 2:00 p.m., New Mexico State Police Sergeant Jimmy Glasscock, a site safety officer, arrived from his home in Rio Rancho, New Mexico, and officers entered the house in chemical suits. Using a gas-detecting instrument, the officers discovered that there was something flammable in the air; but they did not detect phosphine gas, hydrochloric acid, or anhydrous ammonia, which may be released during the manufacture of methamphetamine.

After ventilating the house, the officers searched the premises. They seized various materials they associated with the manufacture of methamphetamine: solvents, including camping fuel, acetone, lacquer thinner, Bix stripper, and Heet; iodine; two syringes; a digital scale that measured in gram increments; tubing; a pressure cooker; a jug containing two layers of unidentified chemicals; coffee filters; pH strips; a flask containing some sort of clear liquid; and a cup containing a yellow liquid. Significantly, a test of the yellow liquid revealed that it contained a substantial amount by weight of phenyl-2-propanone (P2P), a controlled substance. The officers also discovered a booby-trapped door, consisting of an extension cord with exposed wires that had been wrapped around the knob of a bedroom door. Had the cord been plugged in, it could have shocked anyone who touched the knob.

The most common method of manufacturing methamphetamine uses pseudoephedrine, iodine, and red phosphorous. But methamphetamine may also be manufactured from P2P in one step, using methylamine, mercuric chloride, and aluminum foil. The government chemist who testified at trial was not aware of any commercial use for P2P other than for the manufacture of methamphetamine. According to the chemist, the process of manufacturing P2P is more complicated than the process of manufacturing methamphetamine from P2P.

The officers did not discover any methylamine, mercuric chloride, or aluminum foil at Defendant's house. Nor did they find pseudoephedrine or red phosphorous. But testimony at trial established that the solvents found at Defendant's home could be used to manufacture methamphetamine using either the P2P or the red-phosphorous method, and that scales and tubing of the type seized, pressure cookers, and pH strips are frequently used to manufacture methamphetamine. Also, coffee filters may be used when methamphetamine is manufactured through the red-phosphorous method.

When interviewed by Officer David Edmonson on August 2, 2001, Defendant explained the presence of various items by saying that he was using them to make beer. A book called The Brewmaster's Bible had been found in the house; yet there were no bags of yeast, hops, or beer bottles.

At trial Defendant introduced testimony suggesting that he possessed some of the incriminating items for non-criminal reasons. For example, his mother testified that Defendant used the syringes to care for the chickens he raised. She also testified that paraplegics are prone to bladder infections and that Defendant used the pH strips to test his urine to determine whether he had such an infection. There was also testimony indicating that lacquer thinner could be used to thin paint, and that Defendant was an avid painter. And a witness testified that

-4-

Defendant drank a lot of coffee, explaining why coffee filters were found in his home.

On the other hand, Defendant's mother testified that she believed Defendant used methamphetamine; and after Defendant was arrested he informed a Drug Enforcement Agency agent that he knew a woman who manufactured methamphetamine using the P2P method.

## II.    DISCUSSION

### A.    Admission of Defendant's Statement

Defendant asserts that the district court improperly admitted his statement that he knew a woman who manufactured methamphetamine using the P2P method.  He contends that "[t]his evidence was not relevant to any issue raised by the elements of the offense and it posed a danger that the jury would convict on the ground that [he] apparently associated with drug dealers."  Aplt. Br. at 27. The district court admitted the statement, saying that although it was prejudicial, it was also "highly probative" of Defendant's knowledge.  Tr. at 318-19.

"We review evidentiary challenges for an abuse of discretion." *United States v. Lugo*, 170 F.3d 996, 1005 (10th Cir. 1999).  The district court did not abuse its discretion in admitting the statement.  It is relevant to show that Defendant was aware that P2P could be used to manufacture methamphetamine. The statement thus sheds light on why Defendant possessed the various items

seized from his home.  The district court could properly find that the statement's probative value was not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.

## B.    Sufficiency of the Evidence

Defendant contends that the evidence was insufficient to prove that he attempted to manufacture methamphetamine.  "We review the record for sufficiency of the evidence de novo."  *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997).  "Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government."  *Id.* (internal quotation marks omitted).

"To prove an attempt to manufacture methamphetamine, the government must show (1) intent to manufacture methamphetamine, and (2) commission of an act which constitutes a substantial step towards commission of the substantive offense."  *United States v. Smith*, 264 F.3d 1012, 1015 (10th Cir. 2001) (internal quotation marks omitted).  Intent to manufacture methamphetamine may be inferred from the surrounding circumstances.  *Id.* at 1017.  A substantial step is "an act that is strongly corroborative of the firmness of the defendant's criminal intent."  *United States v. Prichard*, 781 F.2d 179, 181 (10th Cir. 1986) (internal quotation marks omitted).

Defendant contends that "[t]he government's evidence was inadequate to sustain any reasonable inference that [he] had the intent to manufacture methamphetamine and committed a substantial step in that direction." Aplt. Br. at 26 (emphasis omitted). He asserts that "[s]imple possession of [P2P] alone cannot constitute a substantial step in the attempted manufacturing of methamphetamine," and that to have taken a substantial step he would have needed to possess methylamine and mercuric chloride. *Id.* at 18. He further contends that he did not possess anything suggesting that he had taken steps to begin the manufacturing process. He points out:

> No recipe, manual or instructions for the manufacture of [P2P] or methamphetamine were found; no residue was discovered in any of the seized items; no waste or by-products were revealed by the laboratory tests; no receipts that materials essential to the process had been purchased were uncovered; no notes or telephone numbers on who may have the necessary ingredients were found; no discarded manufacturing materials were discovered in the garbage and no site for burning waste products was encountered.

*Id.* at 19-20.

We are not persuaded. First, on the issue of intent, we conclude that a reasonable jury could find beyond a reasonable doubt that Defendant intended to manufacture methamphetamine. Although the defense introduced testimony indicating that Defendant may have possessed most of the items seized from his home for legitimate purposes, the number of such items was probative. *Cf. Smith*, 264 F.3d at 1017 ("Although there are numerous legitimate uses for Coleman

fuel, it provides some evidence that in the likely course of things Smith would have manufactured methamphetamine." (internal quotation marks omitted)). More importantly, Defendant's possession of P2P was highly suspicious. The evidence at trial suggested that P2P has only one use—the manufacture of methamphetamine. The absence of an explanation for Defendant's possession of P2P made his possession of the other items more incriminating. Also indicative of a guilty intent was Defendant's response to Officer Edmonson's inquiry about the presence of the items that could be used in the manufacture of methamphetamine; the jury could disbelieve his claim that he was using them to make beer. *See United States v. Smith*, 833 F.2d 213, 218 (10th Cir. 1987) ("A false exculpatory statement will support an inference of consciousness of guilt."). In addition, evidence at trial established that Defendant was a methamphetamine user, knew someone who manufactured methamphetamine using the P2P method, and, for some reason, found it necessary to install a booby trap on one of the doors in his house.

We likewise reject Defendant's claim that there was insufficient evidence of a substantial step toward the manufacture of methamphetamine. "We have stressed that a defendant need not possess a full 'working lab' to be convicted of attempting to manufacture methamphetamine." *Smith*, 264 F.3d at 1016. Instead, "assembling some (but not all) of the necessary equipment and ingredients can

support a conviction for attempting to manufacture methamphetamine, depending on the degree of such assembly." *Id.*; *see also United States v. Becker*, 230 F.3d 1224, 1234 (10th Cir. 2000) (substantial-step requirement satisfied when Defendant possessed many, but not all, of the materials necessary to manufacture methamphetamine).

Of particular significance is Defendant's possession of P2P, an act which, as previously noted, in itself "is strongly corroborative of the firmness of [D]efendant's criminal intent [to manufacture methamphetamine]." *Prichard*, 781 F.2d at 181. After all, the government chemist provided uncontested testimony that P2P had no known purpose other than such manufacture. This very situation is contemplated by the Model Penal Code, whose definition of attempt resembles our law in requiring "an act or omission constituting a substantial step in a course of conduct planned to culminate in [the] commission of the crime." M.P.C. § 5.01(1)(c). Under the heading, "Conduct That May Be Held Substantial Step Under Subsection 1(c)," it lists types of conduct that suffice "if strongly corroborative of the actor's criminal purpose." *Id.* § 5.01(2). Included in the list are:

> (e) possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances;

> (f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for

its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances[.]

*Id.* In *Prichard*, 781 F.2d at 181-82, when assessing whether the defendant committed a substantial step toward the commission of a bank robbery, we relied on the list of activities in Model Penal Code § 5.01(2), specifically quoting subsection (f). We similarly find § 5.01(2) to be persuasive in this case.

Defendant's possession of P2P, which he knew to be useful in the manufacture of methamphetamine, together with his possession of numerous other items that can be used for the same purpose, was ample evidence for a reasonable jury to conclude beyond a reasonable doubt that Defendant had taken a substantial step in the manufacture of methamphetamine. We therefore reject Defendant's argument that the evidence was insufficient to support his conviction.

## III. CONCLUSION

We AFFIRM the judgment below.