FILED
United States Court of Appeals
Tenth Circuit

November 30, 2007

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

DARREN BRAD WEST,

       Defendant-Appellant.

No. 06-4196
(D. Utah)
(D.C. No. 2:05-CR-616-PGC)

---

### ORDER AND JUDGMENT[*]

---

Before **MURPHY**, Circuit Judge, **McWILLIAMS,** Senior Circuit Judge, and **MCCONNELL**, Circuit Judge.

---

In a two-count indictment filed on August 17, 2005, in the United States District

Court for the District of Utah, Darren Brad West (the defendant) was charged as follows:

(1) he knowingly possessed, on June 8, 2005, a list I chemical, phosphorus, knowing or

having reason to believe that it would be used to manufacture methamphetamine, a

Schedule II controlled substance within the meaning of 21 U.S.C. § 812, in violation of

21 U.S.C. § 841(c); and (2) beginning on a date unknown, but at least by August 22,

2002, and continuing through April 25, 2005, in the Central Division of the District of

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Utah, he knowingly possessed a list II chemical, iodine, knowing or having reason to know that it would be used to manufacture methamphetamine, a Schedule II controlled substance, within the meaning of 21 U.S.C. § 812, all in violation of 21 U.S.C. § 841(c). On December 9, 2005, the defendant entered a plea of guilty to both counts in the indictment. On August 22, 2006, defendant was sentenced to imprisonment for 108 months. Defendant appeals the sentence imposed by the district court. We affirm.

The background facts are not in any real dispute. Drug Enforcement Administration (DEA) agents were alerted by a diversion investigator in Ohio that an Ohio retailer had been shipping large quantities of 7% iodine tincture to a John Walker in Pleasant Grove, Utah. After contacting the retailer, who confirmed the information, DEA agents visited the address given them by the retailer, which was the defendant's home residence. DEA agents spoke with the defendant on June 8, 2005, who admitted that he, using the assumed name of John Walker, had been purchasing iodine from the Ohio retailer for an extended period of time and reselling it to his neighbor, knowing that his neighbor was using the iodine to produce methamphetamine. In all, the defendant had ordered some 84 pints (10.5 gallons) of 7% iodine. In the process of their investigation, the DEA agents on that same day conducted a "trash cover" of defendant's home and recovered 199 matchbook striker plates from which the red phosphorus had been extracted. (The neighbor committed suicide several days prior to the agents' initial contact with the defendant.) The defendant was not arrested at that time, but was later arrested on August 23, 2005, by the Utah State Highway Patrol on felony charges of

2

illegal possession of a controlled substance and misdemeanor charges of drug possession, use or possession of drug paraphernalia, and driving with a measurable controlled substance. It later developed that defendant was himself a user of methamphetamine. In this general connection, we learn from the record that three elements needed in the manufacture of methamphetamine are iodine, phosphorus, and ephedrine.[1]

In determining defendant's guideline range, the PSR set defendant's base offense level at 36, pursuant to U.S.S.G. § 2D1.1(c)(2). The PSR then reduced that offense level by two levels for acceptance of responsibility. See U.S.S.G. § 3 E1.1. With an adjusted offense level of 34, coupled with defendant's criminal history category of I, defendant's guideline range called for imprisonment for 151 to 188 months. As indicated, the district court ultimately sentenced defendant to imprisonment for 108 months. Defendant appeals that sentence.

On appeal, the defendant raises two issues: (1) the district court, in setting defendant's offense level, erred in using § 2D1.1(c)(2), and should have used § 2D1.11; and (2) the district court erred in determining the amount of "actual" methamphetamine that could have been produced from the iodine that the defendant had sold to his neighbor.

I.

As stated, the defendant pled guilty to knowingly possessing a list I chemical,

---

[1] We also learn from the record that iodine has many legitimate uses, and is, for example, used extensively in farming and ranching activities.

phosphorus, and a list II chemical, iodine, knowing, or having reason to believe, that they would be used to manufacture methamphetamine. In determining the appropriate guideline range for sentencing, the district court, using U.S.S.G. § 2D1.1(c)(2), set defendant's offense level at 36. The defendant contends that in so doing, the district court erred, and that the district court, in determining defendant's base offense level, should have used guideline § 2D1.11. However, § 2D1.11, in subsection (c), under the heading "Cross-Reference," provides as follows:

> (1)     If the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, Trafficking) if the resulting offense level is greater than determined above.

In line with the "Cross Reference," the district court was correct in holding that the offenses to which defendant had pled guilty did involve the unlawful manufacture of methamphetamine, or the attempt to do so. Defendant was most certainly aiding and abetting his neighbor, who manufactured the methamphetamine, by furnishing him two of the necessary components for the manufacture of methamphetamine, namely, iodine and phosphorus.[2] By way of background, an aider and abettor is deemed to be a principal and is chargeable as such. *See United States v. Triana*, 477 F.3d 1189, 1196 (10th Cir. 2007); *United States v. Cooper*, 375 F.3d 1041, 1049 (10th Cir. 2004). The district court did not err in using § 2D1.1(c)(2), and declining to use § 2D1.11. In this connection, we should

---

[2] In defendant's brief in this court, he states that "his role was limited to providing iodine and perhaps a small quantity of red phosphorous (although that fact was not found by the court) to a third party to manufacture methamphetamine."

4

note that U.S.S.G. § 2D1.11, application note 2, provides as follows:

> "Offense involved unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully," as used in subsection (c)(1), means that the defendant, or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct), completed the actions sufficient to constitute the offense of unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully. (Emphasis added).

For a general discussion of this matter, *see United States v. Smith*, 264 F.3d 1012, 1017 (10th Cir. 2001) (holding that it is not necessary, as a matter of law, to show that the defendant actually possessed all the needed precursor chemicals to support a conviction for attempting to manufacture methamphetamine); *United States v. Leopard*, 936 F.2d 1138, 1141 (10th Cir. 1991) (a defendant need not possess a "full working lab" to be convicted of attempting to manufacture methamphetamine).

## II.

As stated, in determining defendant's guideline range, the PSR set defendant's base offense level at 36, using U.S.S.G. § 2D1.1(c)(2), which provides that if the amount of controlled substance involved is at least 500 grams, but less than 1.5 kilograms, the base offense level is 36. Such determination was based on the amount of methamphetamine that could be manufactured based on the amount of iodine delivered by the defendant to his neighbor. Specifically, in this regard, paragraph 12 of the PSR reads as follows:

> In total, the defendant purchased **84 pints (10.5 gallons) of 7% iodine tincture**. For purposes of determining a drug quantity necessary for establishing a base offense level in the

5

Sentencing Guidelines, the bolded amounts of **iodine (3:1 ratio)** have been converted using the 1-2-3 conversion formula provided by DEA Laboratories to an aggregate quantity of **917 grams of methamphetamine (actual).** (emphasis in original).[3]

The PSR then reduced defendant's offense level by two levels for acceptance of responsibility, the U.S. Attorney not consenting to a three level reduction. With an adjusted offense level of 34 and a criminal history category of I, the guideline range was imprisonment for 151 to188 months. As stated, the defendant was sentenced to 108 months.

At sentencing, and there were actually two sentencing hearings, objections were made by the defendant to the quantity of methamphetamine which could be produced from the quantity of iodine that the defendant delivered to his neighbor. At the final sentencing hearing, the district court accepted the defendant's argument on this point and found that the amount of methamphetamine that could be produced by the iodine that the defendant delivered to his neighbor, who used it to manufacture methamphetamine, was between 100 and 300 grams, which would result in an adjusted base offense level of 32 or 34. Subtracting three levels for acceptance of responsibility would result in an adjusted offense level of 29 or 31. An adjusted offense level of 29, and a criminal history category of I, results in a guideline range of 87 to 108 months imprisonment. An adjusted base level of 31 and a criminal history category of I sets the guideline range at 108 to 135 months imprisonment. In this general connection, the district court stated that regardless

---

[3] The PSR indicates that the defendant filed no objections to the PSR.

of whether the quantity of methamphetamine produced from the iodine that defendant delivered to his neighbor was 100 grams or 300 grams, his sentence would be the same. The court then sentenced the defendant to imprisonment for 108 months. Specifically, at the final sentencing hearing, the district court spoke as follows:

> I'm going to go ahead and find that in this particular case on the particular facts of this situation, not necessarily other situations, that the appropriate basis for moving forward is 100 to 300 grams of <u>actual</u> methamphetamine. (emphasis ours).

On appeal, counsel claims that the district court erred in calculating that the 100 to 300 grams of methamphetamine producible from the iodine that defendant delivered to his neighbor, who then manufactured the methamphetamine, was "actual," or "pure," as opposed to being a mere "mixture" of methamphetamine. Suffice it to say, we are not persuaded by defendant's argument that the district court erred in concluding that the quantity of methamphetamine produced by defendant's neighbor was "actual" methamphetamine. Under *United States v. Higgins*, 282 F.3d 1261, 1280 (10th Cir. 2002), a court cannot "calculate drug quantities by guesswork." However, in both sentencing hearings, the court gave the defendant an opportunity to estimate drug quantity. While the defendant's expert had some general concerns about purity, the only estimate of quantity he provided was 100 to 300 grams.

Application Note 12 to U.S.S.G. § 2D1.1 provides that "[w]here there is no drug seizure, the court shall approximate the quantity of the controlled substance." In this regard in *U.S. v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005), we cited with approval

7

the following: "[T]he trial court may rely upon an estimate to establish the defendant's guideline offense so long as the information relied on has some basis for support in the facts of the particular case and bears sufficient indicia of reliability."

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge